UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**FILED**
NOV 2 4 2003
LARRY W. PROPES, CLERK
COLUMBIA, SC

| | |
|---|---|
| FRIENDS OF THE EARTH, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 3:92-2574-O |
| ) | |
| GASTON COPPER RECYCLING ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE AND DEFENDANT'S CONSOLIDATED RESPONSE TO PLAINTIFFS' BRIEFS ON THE ISSUE OF STANDING

On August 1, 2003, pursuant to Rules 52(b) and 59(a) of the Federal Rules of Civil Procedure, plaintiffs filed Plaintiffs' Motion to Amend Findings of Fact and Conclusions of Law and to Alter or Amend Judgment (hereafter "Pl. Mot. to Amend"), which sought to amend the Findings of Fact and Conclusions of Law and Judgment entered by the Court on July 18, 2003. Plaintiffs filed this motion because they had recently discovered the death of Wilson Shealy, upon whom the court of appeals had relied in upholding plaintiffs' standing. *Friends of the Earth v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156-164 (4th Cir. 2000) (*en banc*). Plaintiffs argued that the Court should amend its Findings of Fact and Conclusions of Law to find that plaintiffs had standing based on the trial testimony of Guy Jones and William McCollough. Pl. Mot. to Amend 2; Plaintiffs' Memorandum in Support of Their Motion to Amend Findings of Fact and Conclusions of Law and to Alter or Amend Judgment (hereafter "Pl. Mem. in Support of Mot. to Amend"), 2-5. Plaintiffs also requested that if the Court had any doubt as to the issue on plaintiffs' standing, the Court allow plaintiffs to supplement the record to show plaintiffs have standing based on other members of

Citizens Local Environment Action Network (CLEAN). Pl. Motion to Amend 2; Pl. Mem. in Support of Motion to Amend 5-6. On October 6, 2003, plaintiffs filed Plaintiffs' Reply Brief in Support of Their Motion to Amend Findings of Fact and Conclusions of Law and to Alter or Amend the Judgment with Regard to Their Standing (hereafter "Plaintiffs' Reply Brief"). Plaintiffs attached the affidavits of Guy Jones, Edythe Long Shealy, Barry Dwayne Shealy and Judy Turnipseed to support plaintiffs' standing.

On October 29, 2003, defendant filed Defendant's Consolidated Response to Plaintiffs' Briefs on the Issue of Standing (hereafter "Def. Response") and Defendant's Motion to Strike. We show below that defendant's arguments are without merit.

## ARGUMENT

### I

### DEFENDANT'S MOTION TO STRIKE IS FRIVOLOUS

On October 6, 2003, plaintiffs filed Plaintiffs' Reply Brief. Plaintiffs attached the affidavits of Guy Jones, Edythe Long Shealy, Barry Dwayne Shealy and Judy Turnipseed (hereafter "the affidavits") to support plaintiffs' standing. Defendant contends in its Motion to Strike that the Court should strike the affidavits from the record because plaintiffs should have waited for the Court to rule on Plaintiff's Motion to Amend before submitting the affidavits to the Court. Defendant's Motion to Strike is frivolous. The affidavits are not part of the record because the Court has not ruled on Plaintiff's Motion to Amend. If the Court grants plaintiffs' motion, the affidavits will become part of the record.

It is common practice for a party seeking to introduce evidence to show the court the evidence. Plaintiffs attached the affidavits to Plaintiffs Reply Brief to show the Court the

evidence they have to support their standing. The affidavits allow the court to evaluate the strength of all of the parties' motions. Therefore, plaintiffs properly submitted the affidavits to allow the Court to understand the issues before it.

## II

## PLAINTIFFS HAVE SATISFIED RULE 59(a)

Plaintiffs' Motion to Amend Findings of Fact and Conclusions of Law and to Alter or Amend Judgment with regard to their standing is based on Wilson Shealy's death. Defendant contends that plaintiffs have not satisfied the requirements of Rule 59(a) for moving to amend or alter a judgment based on newly discovered evidence. Def. Response 8-9. However, as plaintiffs will show below, plaintiffs have fully satisfied the requirements of Rule 59(a).

The Court of Appeals for the Fourth Circuit has stated that, in order to seek relief under Rule 59 because of newly discovered evidence, the movant must show (*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989)):

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended. [quoting *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987)]

Rule 59 normally involves the situation where the losing party seeks to set aside a judgment based on newly discovered evidence. For example, *Boryan* involves that situation. 884 F.2d at 771. The general standard for invoking Rule 59 should, if anything, be less restrictive where the moving party has prevailed and seeks to present evidence to support its prevailing status.

Although courts generally have wide discretion when considering motions under Rule 59,

the Court of Appeals for the Fourth Circuit has indicated that a court's discretion to deny a party the opportunity to introduce evidence should be narrowed when the issue involves standing. In *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 516-517 (4th Cir. 2003), the court of appeals held that the district court had abused its discretion when it denied the defendant's motion for reconsideration on the issue of standing after the defendant had presented evidence not previously considered by the district court. The court reasoned (*id.* at 516):

> The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority.

Just as defendants can raise the issue of standing after the judgment through a motion for reconsideration, plaintiffs can equally provide further support for their standing at that same time through a motion under Rule 59(a).

Circumstances sometimes change that affect fundamental issues in cases while they are pending review by an appellate court. When changed circumstances affect such issues, like standing or jurisdiction, the parties permit the record to be supplemented. For example in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 193-194 (2000), which is a similar citizen suit under Section 505(a) of the Clean Water Act, the defendant's facility that had been discharging pollution was closed after the Court of Appeals for the Fourth Circuit had entered its judgment, but before the Supreme Court heard the case. The defendant was allowed to supplement the record regarding whether the Supreme Court had subject matter jurisdiction to hear the case. 528 U.S. at 993. The Supreme Court made clear that this evidence had to be considered since it remanded the case to the court of appeals to determine whether the defendants' evidence

rendered the case moot. *Id.* at 193-194.[1]

Here, plaintiffs discovered Wilson Shealy's death after judgment was entered by this Court but before a notice of appeal had been filed or the time for filing a Rule 59 motion had expired. If plaintiffs had discovered Mr. Shealy's death more than a year after the judgment was entered while waiting for the court of appeals to decide an appeal, plaintiffs still would have been obligated to bring Mr. Shealy's death to the attention of the Court because his death affects the fundamental issue of standing. In that event, as *Laidlaw* demonstrates, the court of appeals would have had to consider the new standing evidence. Plaintiffs happened to discover Mr. Shealy's death within the time frame when Rule 59 applies. Since this case is still before the district court and the time for a motion under Rule 59 has not expired, it follows *a fortiori* that the Court must consider plaintiffs' evidence relating to standing.

Here, as noted above, the Fourth Circuit held that plaintiffs had standing based on the injury to Wilson Shealy's interests. 204 F.3d at 156-164. Although plaintiffs cannot premise standing on Wilson Shealy any longer, they still have standing based on other members of their organizations. Common sense dictates that plaintiff organizations, whose standing is based on their members, must have the opportunity to supplement the record when necessary due to an unforeseen circumstance, such as the death of a member, relied upon for standing.

Plaintiffs' evidence clearly satisfies the requirements of the court of appeals in *Boryan* for a motion under Rule 59(a).

---

[1] In *Laidlaw,* the Supreme Court remanded the issue of mootness to the district court because "[t]he effect of both Laidlaw's [defendant's] compliance and the facility closure on the prospect of future violations is a disputed factual matter." 528 U. S. at 193-194. Thus, the Court made clear that closure of the facility did not *ipso facto* make the case moot.

5

Wilson Shealy's death is clearly newly discovered evidence.

First, plaintiffs learned for the first time on July 29, 2003 (Pl. Mem. in Support of Mot. to Amend 2), that Mr. Shealy, a member of CLEAN, had died after the July 1995 trial. Thus, the evidence was newly discovered.

Second, Mr. Shealy died on September 22, 2002 (Affidavit of Edythe Shealy, Pl. Ex. 600 (hereafter "E. Shealy Aff."), para. 1), seven years after the 1995 trial. Therefore, plaintiffs could not have discovered the evidence by due diligence before trial.

Third, Mr. Shealy's death is obviously material evidence and is not cumulative or impeaching. The injury to Mr. Shealy from the discharge of pollutants by defendant was the basis for the conclusion of the court of appeals that plaintiffs had standing to prosecute this suit. 204 F.3d at 156-157.

Fourth, Mr. Shealy's death would reverse the outcome of the litigation if plaintiffs do not have other evidence, whether already in the trial record or new evidence, to support their standing.

The evidence plaintiffs seek to introduce to support standing is also newly discovered evidence under Rule 59(a).

Plaintiffs seek to introduce a new affidavit of Guy Jones. Mr. Jones testified at trial in support of his standing. The sole substantive information in Mr. Jones' affidavit relates to his canoeing at the confluence of Bull Swamp Creek and the North Fork of the Edisto after the trial. Affidavit of Guy Jones, Pl. Ex. 603 (hereafter "Jones Aff."), para. 3. Thus, this evidence could not have been introduced at trial.

Plaintiffs also seek to introduce evidence concerning the membership in CLEAN of Edythe Shealy, Wilson Shealy's widow, and Barry Shealy, Wilson Shealy's son, and concerning the harm

6

to them from defendant's discharge of pollution. E. Shealy Aff., paras. 2, 6; Affidavit of Barry Shealy, Pl. Ex. 601 (hereafter "B. Shealy Aff."), paras. 2, 7. This evidence could not have been introduced at trial because they were not members of CLEAN at that time. Affidavit of Judy Turnipseed, Pl. Ex. 602 (hereafter "J. Turnipseed Aff."), paras. 2, 3.

This evidence satisfies the criteria for a Rule 59(a) motion based on newly discovered evidence under *Boryan v. United States*. First, as indicated above, the evidence was newly discovered since judgment was entered. Second, plaintiffs performed due diligence since the evidence did not previously exist. Third, since the evidence relates to standing, it is material and not cumulative or impeaching.[2/] Fourth, plaintiffs contend that the trial testimony of Mr. Jones and Mr. McCollough is adequate to support standing. However, if the Court were to disagree, the new evidence would result in a new outcome if neither Mr. Jones' nor Mr. McCollough's trial testimony is held adequate.

Defendant claims that the plaintiffs "failed to present their strongest case at trial." Def. Response 8. In fact, plaintiffs presented their strongest case based on the evidence at that time. The court of appeals held that plaintiffs had fully sustained their burden to prove standing. Plaintiffs now seek to present further evidence only because of Wilson Shealy's unforeseen and unforeseeable death. Simple fairness supports their request.

### III

### PLAINTIFFS HAVE STANDING BASED ON GUY JONES' TESTIMONY AND AFFIDAVIT

Defendant contends that the new affidavit of Mr. Jones, who is a member of both Friends of

---

[2/] The evidence would only be cumulative if, as plaintiffs contend, Mr. Jones or Mr. McCollough's trial testimony is adequate to support the standing of both FOE and CLEAN.

the Earth (hereafter "FOE") and CLEAN, is not adequate to show that he suffered injury. Def. Response 5-6. In doing so, defendant ignores the trial testimony of Mr. Jones. Trial Tr. I, pp. 92-104. Mr. Jones' new affidavit only supplements that evidence with evidence concerning events since trial.

Defendant's only comment as to Mr. Jones' trial testimony is to say that "[p]laintiffs appear to implicitly acknowledge that Mr. Jones' trial testimony does not demonstrate injury-in-fact to him." Def. Response 5. On the contrary, plaintiffs have not acknowledged, implicitly or in any other way, that Mr. Jones' trial testimony is not fully adequate to support the standing of both FOE and CLEAN. They have specifically argued that Mr. Jones' trial testimony, like that of Mr. McCollough, supports standing. Pl. Mot. to Amend 2; Pl. Mem. in Support of Mot. to Amend 2-5; Pl. Mot. to Amend, Pl. Ex. 1 (Additional Findings of Fact Concerning Plaintiffs' Standing), paras. 3-12; *id.*, Pl. Ex. 1 (Additional Conclusions of Law Concerning Plaintiffs' Standing), paras. 12-14, 21-22, 28. In submitting Mr. Jones' new affidavit, plaintiffs are simply adding to an already adequate record by showing further injury. A party obviously does not concede the inadequacy of its previous evidence by seeking to introduce additional probative evidence.

Defendant argues that Mr. Jones did not suffer an injury-in-fact because Mr. Jones has not canoed in waters subject to contamination by defendant's pollutants. Def. Response 3-4. At trial, Mr. Jones testified (Trial Tr. I, p. 100):

> Q. Are you concerned about the quality of the North Fork of the Edisto?
>
> A. Yes.
>
> Q. Are you concerned about the quality of the Main Stem of the Edisto?
>
> A. Yes.

8

> Q. Do you canoe or kayak on those areas aside from leading trips as a guide?
>
> A. Yes, I do.
>
> Q. In the same areas that you mentioned previously?
>
> A. Those areas and others as well.

As defendant admits (Def. Response 4), the court of appeals found that the confluence of Bull Swamp Creek and the North Fork of the Edisto is 16.5 miles downstream from defendant's discharge point. 204 F.3d at 158. The court of appeals also concluded that defendant's "discharge affects or has the potential to affect the waterway for 16.5 miles downstream." *Ibid.* The court of appeals based part of its conclusion on evidence from the Department of Health and Environmental Control of the State of South Carolina, which indicated that defendant's "runoff will reach <u>at least</u> as far as the Edisto, which lies 12.5 miles beyond the Shealy's property" (emphasis added). *Ibid.* Mr. Shealy's property is 4 miles downstream from defendant's facility. *Ibid.* The record is clear that defendants polluted discharge reaches at least as far as the North Fork of the Edisto River and that Mr. Jones canoed on the North Fork of the Edisto River. Thus, Mr. Jones has canoed in the waters subject to contamination by defendant's discharged pollutants.

Mr. Jones' new affidavit further demonstrates that he has canoed in locations affected by defendant's illegal discharges since the trial in 1995. Mr. Jones states that "[s]nice the trial in this case, I have canoed at the confluence of Bull Swamp and the North Fork of the Edisto River."[3/] Jones Aff, para. 3. Thus, Mr. Jones has canoed in the waters found by the court of appeals to be affected by defendant's discharge.

---

[3/] Defendant argues that Mr. Jones did not provide the exact dates when he canoed at the location. Def. Response 5. The date is irrelevant. It is enough that Mr. Jones' affidavit provides evidence that he uses the area affected by defendants' discharge.

9

Defendant claims that "there is no evidence in the record that contaminants from GCRC's discharge were present at the confluence of Bull Swamp Creek and the North Fork Edisto River *at any time since the July 1995 trial of this case*" (emphasis in original). Def. Response 5. It is not necessary that plaintiffs show that defendants have violated their permit after trial. Plaintiffs know of no case, and defendant cites none, where any court has indicated that standing depends on post-trial violations.

Plaintiffs established standing by showing that Mr. Jones uses a waterway that has been affected by the pollution from defendants' discharge and therefore he is reasonably concerned about defendants' discharges. Trial Tr. I, pp. 97-104. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., supra,* 528 U.S. at 183-184. Mr. Jones testified about his concern over the quality of the water (Trial Tr. I, p. 97) and over the pollution in the rivers in which he swims and canoes (*id.*, p. 102). Mr. Jones specifically testified that "on the Edisto, the heavy metals that may be present from the Gaston Copper Plant pose a very real concern." *Id.*, p. 97. Mr. Jones further stated (*id.*, p. 99):

> Well, we tend to direct our activities in the form of canoe trips toward areas that people will enjoy and feel safe in, and so we are very concerned. And this involves every river throughout the state that we– at one point or another we've probably conducted a trip on just about every navigable river in South Carolina. The quality of the water on an ongoing basis is of paramount concern to us.

In addition, even if Mr. Jones has not established that he had canoed in the waters receiving defendant's discharged pollutants, Mr. Jones would still have shown injury-in-fact because his economic interests have been affected by defendant's activities. At trial, Mr. Jones testified that he was the majority owner of River Runner Outdoor Center and its president. Trial Tr. I, p. 92. Mr. Jones still holds this position. Jones Aff., para. 2. As a guide for River Runner Outdoor Center, Mr.

Jones runs canoe trips on the North Fork of the Edisto from Shill's Bridge to the Edisto Gardens in Orangeburg and from Rowesville to Brachnville. Trial Tr. I, pp. 93-94. Mr. Jones also canoes at the confluence of Bull Swamp Creek and the North Fork of the Edisto. Jones Aff., para. 2. He is concerned about the public's perception about the quality of the water because (Trial Tr. I, p. 97):

> * * * business is very much dependent upon the public's perception that water quality is good, people are only interested in taking canoe trips in areas that are - that have high aquatic quality and that you wouldn't mind swimming in or wading in.

Mr. Jones' concern over the water quality because of its impact on his business is alone sufficient to establish plaintiffs' standing. In *American Canoe Ass'n. v. Murphy Farms, Inc., supra*, 326 F.3d at 518-519, member of the American Canoe Association offered essentially the same testimony with regard to his river guide business. He testified that his "customers have * * * expressed concerns about water quality and he is worried that he will lose business when his customers learn about discharges of animal waste into the river." *Id.* at 519. His economic concerns were sufficient for the Fourth Circuit to hold that plaintiffs had standing. *Id.* at 520. Mr. Jones' economic concerns are likewise sufficient.

## IV

### PLAINTIFFS HAVE STANDING BASED ON THE AFFIDAVITS OF THE SHEALYS

Defendant argues that the injury which was suffered by Wilson Shealy cannot be imputed to Edythe Shealy, his widow, or Barry Shealy, his son. Def. Response 6. However, plaintiffs are not imputing Wilson Shealy's injury to his relatives. Edythe and Barry Shealy have suffered their own, separate injuries. Both of them are concerned about the pollutants discharged by defendant and the effect of defendant's activities on the use and enjoyment of the lake on Edythe Shealy's property.

11

E. Shealy Aff., para. 6; B. Shealy Aff., para. 7. They state that they suffer from the same injuries as were set forth in Wilson Shealy's trial testimony. Wilson Shealy testified that because of the pollution in his lake, he limited the fish he ate from the lake and he limited the amount of time that he let his children and grandchildren swim in the lake. Trial Tr. I, pp. 41-42. Mr. Shealy also testified that the polluted lake diminished the value of his property. *Id.*, p. 43. Mr. Shealy was also concerned about the accumulation of defendant's discharged pollutants in his lake because there was no way to rid the lake of defendant's pollutants. *Id.*, p. 46.

Edythe and Barry Shealy adopted Wilson Shealy's testimony as their own to describe the injuries they have suffered. E. Shealy Aff., para. 3(d), (e); B. Shealy Aff., para. 3(d), (e), (h). Thus, plaintiffs do not impute, as defendant claims (Def. Response 6), the same injuries to Edythe and Barry Shealy as Wilson Shealy suffered. Instead, Edythe and Barry Shealy testify that they have suffered the same injuries. This is hardly surprisingly since Edythe Shealy now owns the family pond and Barry Shealy continues to enjoy the family pond which was the source of Wilson Shealy's injuries. E. Shealy Aff., para. 1; B. Shealy Aff., paras. 1, 5, 7.

Defendant also argues that it has found no authority for a membership organization to replace a deceased member after trial to satisfy the requirement of injury-in-fact. Def. Response 6.[4/] There is no authority either way on this issue. However, common sense supports plaintiffs' contention that Edythe and Barry Shealy's injury gives CLEAN standing. CLEAN, not Wilson Shealy, brought this suit. In order for an organization to have standing, at least one of its members must have standing. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., supra,* 528 U.S. at 180-

---

[4/]Defendant says that plaintiffs' affidavits do not state when CLEAN conferred membership on the Shealys. Def. Response 7. Mr. Shealy's membership passed to his wife on September 22, 2002, when he died. J. Turnipseed Aff., para. 3; E. Shealy Aff., para. 1.

12

181. The court of appeals here based CLEAN's standing on the standing of one of its members, Wilson Shealy. 204 F.3d at 156-159. When Wilson Shealy died, CLEAN would not have standing unless another member had standing. Edythe Shealy became a member of CLEAN upon Wilson Shealy's death. Turnipseed Aff., para. 3; E. Shealy Aff., para. 2. Since Edythe Shealy, as well as Barry Shealy and Mr. Jones have standing, CLEAN continues to have standing.

Defendant claims that, under *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 59 (1987), Edythe and Barry Shealy cannot sue to remedy violations which occurred before they became members of CLEAN. Def. Response 6-7. However, the Shealys are not suing at all to remedy any violations. Wilson Shealy likewise never sued to remedy any violations. The plaintiff is CLEAN. CLEAN sued to remedy defendants' violations.

Plaintiffs have fully satisfied the requirements of *Gwaltney*. *Gwaltney* does not allow suits for "wholly past violations" (484 U.S. at 64), where violations have ceased and the risk of further violations has been eradicated before suit has been filed *(ibid.; Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 693-694 (4th Cir. 1989)). Here, since defendants' violations continued after the complaint was filed, the new violations had obviously not been eradicated. *See* slip op., pp. 24-25, 28-40.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' Memorandum in Support of Their Motion to Amend Findings of Fact and Conclusions of Law and to Alter or Amend Judgment and Plaintiffs' Reply Brief in Support of their Motion to Amend Findings of Fact and Conclusions of Law and to Alter or Amend the Judgment with Regard to Their Standing, this Court should grant Plaintiffs' Motion to Amend Findings of Fact and Conclusions of Law and to Alter or Amend

Judgment and deny Defendant's Motion to Strike.

A proposed order is attached.

              Respectfully submitted,

              */s/ Kathleen L. Millian*

              BRUCE J. TERRIS
              KATHLEEN L. MILLIAN
              ANDREA S. VISVESHWARA*
              Terris, Pravlik & Millian, LLP
              1121 12th Street, N.W.
              Washington, DC 20005
              (202) 682-2100

              *\*Admitted only in Wisconsin; Supervision*
              *By Bruce J. Terris, a member of the*
              *D.C. Bar*

              ROBERT GUILD
              ID # 2499
              314 Pall Mall
              Columbia, SC  29201

              Counsel for Plaintiffs

November 21, 2003

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| FRIENDS OF THE EARTH, INC., *et al.*,   ) | |
| )                                            | |
| Plaintiffs,   ) | |
| )                                            | |
| v.   ) | |
| )                                            | Civil No. 3:92-2574-O |
| GASTON COPPER RECYCLING   ) | |
| CORPORATION,   ) | |
| )                                            | |
| Defendant.   ) | |
| _____ ) | |

CERTIFICATE OF SERVICE

I hereby certify this <u>21st</u> day of November 2003, that I have caused a true copy of the foregoing Plaintiffs' Opposition to Defendant's Motion to Strike and Defendant's Consolidated Response to Plaintiffs' Briefs on the Issue of Standing with a proposed order, to be delivered via first-class mail, postage prepaid, to the following:

> Harold W. Jacobs
> Nexsen Pruet Jacobs, Pollard & Robinson, LLC
> P.O. Box 486
> Charleston, SC 29402

_____
KATHLEEN L. MILLIAN

15