UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FRIENDS OF THE EARTH, INC., *et al.,* )
 )
    Plaintiffs, )
 )
   v. )
 ) Civil No. 3:92-2574-O
GASTON COPPER RECYCLING )
CORPORATION, )
 )
    Defendant. )
_____ )

## SECOND DECLARATION OF BRUCE A. BELL, Ph.D., P.E., BCEE

1. I previously submitted a declaration[1] in support of Plaintiffs' Motion for Summary Judgment that They Have Standing to Continue This Action. My qualifications are stated in that declaration.

2. I have been asked to prepare this affidavit in response to Defendant's Response to Plaintiff's Brief on Standing and the attached Declaration of John K. Durkee.[2]

3. In my first declaration, I opined that a substantial portion of metals discharged by Gaston Copper Recycling Corporation ("Gaston") reaching the confluence of Bull Swamp Creek and the North Fork of the Edisto River will travel in the Edisto River at least 105 miles downstream from the point of the confluence.[3] As discussed in my first declaration, two of plaintiffs' members, Guy Jones and William Anderson, use the Edisto River within these 105 miles.[4] Mr. Durkee did not

---

[1] Declaration of Bruce A. Bell, Ph.D., P.E., BCEE, May 30, 2008 ("May 2008 Bell Declaration").

[2] Declaration of John K. Durkee, September 2, 2008 ("Durkee Declaration").

[3] May 2008 Bell Declaration, paras. 23, 27.

[4] May 2008 Bell Declaration, paras. 31-32.

PLAINTIFFS'
EXHIBIT
14

disagree with my conclusion that a substantial portion of the metals will travel 105 miles from the confluence.

4. Mr. Durkee states that if pH and alkalinity were constant, metals discharged by Gaston might be present downstream as far as the Atlantic Ocean.[5] While an atom of metal discharged by Gaston might reach the Atlantic Ocean, the pH and alkalinity are not constant since they change significantly downstream of a point 105 miles downstream of the confluence.[6] Nevertheless, as I explained in my first declaration, because the water chemistry – pH and alkalinity – are constant to a point 105 miles downstream of the confluence, metals discharged by Gaston will travel to that point.[7]

5. In his declaration, Mr. Durkee purports to evaluate the potential effect of Gaston's discharge.[8] He concludes that the discharge would not have had an effect on the "quality of the waters" downstream of the confluence.[9] Gaston relies on his conclusions to argue that the area "affected" by its discharge does not extend past the confluence of Bull Swamp Creek and the Edisto River.[10] I respond to each of Mr. Durkee's points in the following paragraphs.

6. Mr. Durkee makes a number of statements concerning water quality, but even if they were correct, they would not be relevant to the analysis of whether and how far the metals travel

---

[5]Durkee Declaration, para. 9.

[6]May 2008 Bell Declaration, para. 22.

[7]May 2008 Bell Declaration, paras. 17-21, 23, 27.

[8]Durkee Declaration, para. 4.

[9]Durkee Declaration, para. 13.

[10]Defendant's Response to Plaintiffs' Brief on Standing, 16-17, 20-22.

2

downstream of the confluence. My first declaration mentioned water quality data from monitoring stations on the Edisto River,[11] but the purpose of mentioning these data was to confirm that the metals were reaching this part of river, not to draw any conclusions on the effect of Gaston's discharge upon water quality.[12]

7. In addition to being irrelevant to the distance the metals travel, Mr. Durkee's statements concerning water quality are misleading and incorrect in a number of respects. The relevant data, correctly interpreted, do not support a conclusion that Gaston's discharge is having no effect on the water quality of the Edisto River.

8. Mr. Durkee analyzed data for cadmium, copper, and zinc from two EPA STORET Stations, Station E-042 and Station E-104, for the period from 1996 to the present.[13] This analysis is deficient in multiple respects.

9. First, Mr. Durkee's review did not focus on the relevant time period. The Court found violations of Gaston's permit in the period from October 1990 to April 1997.[14] Mr. Durkee states that his evaluation focused on the potential effect of Gaston's discharge from April 1993 through March 1994.[15] Consideration of one year out of a seven-year period of Gaston's violations is

---

[11]My first declaration contained analysis of data from USEPA STORET stations from 1992 to 2006. Bell Declaration, n.12. Due to typographical errors, the declaration erroneously states in some places data from 1996 to 2006 were analyzed. *Id.*, n.16-19, 28-29, 31-33.

[12]May 2008 Bell Declaration, paras. 28-30.

[13]Durkee Declaration, paras. 6-8, Exhibit C.

[14]Findings of Fact and Conclusions of Law, Docket No. 166 (July 18, 2003) ("2003 Findings and Conclusions"), p. 23.

[15]Durkee Declaration, para. 4.

inappropriate. However, Mr. Durkee apparently did not even review any in-stream water quality data for the time period between April 1993 and March 1994. Instead, he presented data from 1996 to the present.[16] Therefore, most of the data he relies upon are from after the period during which the Court found violations by Gaston.

10. Second, Mr. Durkee's review omitted several of the metals for which Gaston was found to have violations. Specifically, Mr. Durkee did not consider iron,[17] lead, mercury, or nickel.[18] Therefore, Mr. Durkee failed to address all of the metals Gaston discharged in violation of its permit.

11. Third, Mr. Durkee only analyzed data from two stations, Station E-042 and Station E-104.[19] Neither of these stations is downstream of the confluence of Bull Swamp Creek and the Edisto River. Station E-042 is located in Bull Swamp Creek. Station E-104 is located on the Edisto River, upstream of the confluence with Bull Swamp Creek. Neither of these stations provide information on the water quality downstream of the confluence.

12. Fourth, Mr. Durkee incorrectly interpreted the data he reviewed. Mr. Durkee's table listed cadmium, copper, and zinc concentrations at Stations E-042 and E-104 as zero for December 1996, March 1997, June 1997, and September 1997, with the exception of the zinc concentration at

---

[16]Durkee Declaration, paras. 6-8, Exhibit C.

[17]Iron was removed from the South Carolina water quality standards effective June 27, 2008, well after the time period in question and after the date of my previous declaration in this matter. South Carolina Department of Health and Environmental Control, Annual DHEC Regulation Development Report for Fiscal Year 2008 (July 2007 – June 2008), June 27, 2008.

[18]Durkee Declaration, paras. 4-8, Exhibit C. As stated in my first declaration, the Court found that Gaston violated its permit limitations for cadmium, copper, iron, zinc, pH, and oil and grease. In addition, the Court found that Gaston violated monitoring and reporting requirements for additional pollutants, including lead, mercury, and nickel. May 2008 Bell Declaration, para. 7.

[19]Durkee Declaration, paras. 6-8, Exhibit C.

4

Station E-042 on December 1996.[20] He apparently listed these concentrations as zero based on his conclusion that they were less than the practical quantification limit (PQL). In fact, these concentrations were reported as 10 micrograms per liter ($\mu$g/l), which is not less than the PQL. See Attachments B and C. Thus, Mr. Durkee's table should have listed these results as 10 micrograms per liter ($\mu$g/l) rather than zero. These results for cadmium and copper, correctly stated, constitute violations of the water quality standards. See Attachments B and C. This means that there were at least eight more water quality standard violations than Mr. Durkee acknowledged.

13. In addition, 16 other monitoring results listed by Mr. Durkee as zero were actually reported in STORET not as zero, but as a specific number with the indication that the number was less than the applicable PQL. See Attachments B and C. Laboratory results reported as less than the PQL are not equivalent to zero.[21][22] Because the water quality standards for cadmium and copper are significantly lower than the PQL, it is not possible to determine whether the water quality standards were actually violated on those occasions where the sample is lower than the PQL. The listing of these results as zero erroneously implies that they could not have violated the water quality standards.

14. Mr. Durkee's comparison of data from Stations E-042 and E-104 fails to demonstrate that Gaston's discharge is not contributing to water quality violations in the Edisto River. In fact, the opposite is true. I have attached the monitoring results from 1992 to 2006 for cadmium, copper,

[20]Durkee Declaration, Exhibit C.

[21]Standard Methods For the Examination of Water and Wastewater, 21st Edition, American Public Health Association, American Water Works Association and Water Environment Federation, 2005.

[22]Office of Environmental Laboratory Certification - THE UPDATE, South Carolina Department of Health and Environmental Control, August 2006.

5

iron, lead, nickel, and zinc, from Stations E-042 (Bull Swamp Creek, 1 mile upstream of the confluence), E-104 (Edisto River, slightly upstream of the confluence), E-008A (Edisto River, 40 miles downstream of the confluence), E-086 (Edisto River, 90 miles downstream of the confluence), and E-015 (105 miles downstream of the confluence).[23] See Attachments B, C, D, E, and F. These data demonstrate that the concentrations of metals and the number and severity of water quality violations increase on the Edisto River downstream of the confluence. See Attachments A, B, C, D, E, and F. Since the metals from Gaston's discharge reach at least 105 miles downstream of the confluence, there is no doubt that Gaston has contributed to these increased metals concentrations and water quality violations.

15. Mr. Durkee states that, in 2004, the South Carolina Department of Health and Environmental Control ("SC DHEC") did not list Bull Swamp Creek, the North Fork of the Edisto River, or the Edisto River on its list of "impaired" water bodies for cadmium, copper, or zinc.[24] SC DHEC's listing of impaired water bodies in 2004 is not relevant to the condition of those water bodies from 1990 to 1997, the period of Gaston's violations.[25] Mr. Durkee does not dispute that water quality violations have occurred on the Edisto River for cadmium, copper, and zinc, as well as for iron, lead, and nickel.

16. Mr. Durkee also inappropriately compares metal concentrations at Stations E-042 and

---

[23]The data for these stations, with the exception of E-104, were summarized in my first declaration.

[24]Durkee Declaration, para. 5.

[25]In addition, Mr. Durkee fails to report that, in 2004, SC DHEC listed waters on the North Fork of the Edisto River as impaired for mercury, one of the metals for which the Court found Gaston violated its permit. SC DHEC, 2004 South Carolina 303(d) List of Impaired Waters, http://www.scdhec.gov/environment/water/docs/303d2004.pdf, at page 14.

E-104 from 1996 to the present to state drinking water maximum contaminant levels ("MCL's") established under the Safe Drinking Water Act.[26] Such a comparison is irrelevant. The drinking water standards were established to protect human health and to reduce contaminants that may cause cosmetic or aesthetic effects in drinking water.[27] In contrast, the South Carolina water quality standards (WQS) address the protection of aquatic life as well as human health.[28] Water quality standards are often significantly more stringent than MCL's or secondary drinking water guidelines.

17. Mr. Durkee states that concentrations of metals discharged by Gaston will be reduced by dilution.[29] This is not supported by the data. He is correct that if Gaston's discharge were to be diluted by "clean" water, concentrations of metals would be reduced.[30] The data, however, show that elevated levels of metals were found in the North Fork of the Edisto River above its confluence with Bull Swamp Creek, demonstrating that "clean" water was not available to dilute the concentrations of metals discharged by Gaston. See Attachment C. Moreover, high concentrations of metals discharged by Gaston were found downstream of the confluence. See Attachments D, E and F.

18. Mr. Durkee claims that SC DHEC would not have found a "reasonable potential" to

---

[26]Durkee Declaration, para. 7, Exhibit C.

[27]United States Environmental Protection Agency, Setting Standards for Safe Drinking Water, http://www.epa.gov/safewater/standard/setting.html.

[28]Water Classifications and Standards Regulation 61-68, South Carolina Department of Health and Environmental Control, June 25, 2004.

[29]Durkee Declaration, para. 10.

[30]I am using clean water to mean water containing none of the metals discharged by Gaston.

pollute from Gaston's discharge after dilution in the North Fork of the Edisto River.[31] In order to

determine the "reasonable potential" to pollute, a permit writer must estimate the pollutant

concentration in receiving water from all sources, not just the particular discharge, and determine

if there is a reasonable potential that the discharge would cause or contribute to an exceedance of

water quality criteria.[32] Mr. Durkee's analysis is flawed because he does not consider whether

Gaston's discharge would contribute to an exceedance of water quality criteria taking into account

the pollutant concentrations in receiving waters from other sources. As discussed above, Gaston has

in fact contributed to violations of water quality standards on the Edisto River downstream of the

confluence with Bull Swamp Creek.

19. Gaston has continued to violate its permit since the violations found by the Court in this

case. According to the data from EPA's Permit Compliance System ("PCS"), which provides

information on discharger's violations, Gaston has continued to violate discharge limits in its permit

for metals that are the subject of my analysis, as well as for other parameters, and also violated the

reporting requirements of its permit. The PCS data is attached as Attachment G. In addition, a

review of SC DHEC documents from 2003 to the present shows that in the past five years, Gaston

received numerous Notices of Violation and unsatisfactory ratings with respect to its wastewater

treatment plant. The documents showing the Notices of Violations and unsatisfactory ratings are

attached as Attachment H. In a 2007 administrative consent order, Gaston was ordered to pay a civil

penalty for alleged violations of the South Carolina Pollution Control Act. See Attachment H, bates

numbers 18-27.

---

[31] Durkee Declaration, para. 12.

[32] United States Environmental Protection Agency, NPDES Permit Writer's Manual, 1996.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on September 1_, 2008.

BRUCE BELL

# Attachment A

**Number of Samples Violating Water Quality Standards at Various Locations**

| | | Number of Samples Exceeding Chronic (CCC) Toxicity WQS (1992 - 2006) | | | | |
|---|---|---|---|---|---|---|
| | | E-042 | E-104 | E-008A | E-086 | E-015 |
| | Total CCC Limit (ug/L) | On Bull Swamp Creek approx. 1 mile upstream of confluence with Edisto River | On Edisto River slightly upstream of the confluence with Bull Swamp Creek | On Edisto River approx. 40 miles downstream of confluence with Bull Swamp Creek | On Edisto River approx. 90 miles downstream of confluence with Bull Swamp Creek | On Edisto River approx. 105 miles downstream of confluence with Bull Swamp Creek |
| Cadmium | 0.10 | 6 | 6 | 6 | 26 | 27 |
| Copper | 2.9 | 7 | 6 | 8 | 27 | 26 |
| Iron | 1000 | 14 | 1 | 5 | 14 | 14 |
| Lead | 0.54 | 6 | 6 | 6 | 26 | 26 |
| Nickel | 16 | 6 | 6 | 6 | 26 | 26 |
| Zinc | 37 | 1 | 2 | 1 | 2 | 3 |
| Out of Total Number of Samples | | 30 | 30 | 29 | 58 | 58* |

* Zinc has only 57 samples

**Attachment B**

# Summary of Water Quality Data

## E-042 Located at Bull Swamp Creek at the bridge over Road 189 - 1 Mile Upstream of Confluence - STORET Sample Results*

| Date | Cadmium ug/L | Copper ug/L | Iron ug/L | Lead ug/L | Nickel ug/L | Zinc ug/L |
|---|---|---|---|---|---|---|
| June 8, 1992 | **10** | **10** | **1000** | **50** | **20** | 10 |
| September 17, 1992 | **10** | **10** | **1100** | **50** | **20** | 10 |
| December 4, 1996 | **10** | **10** | 540 | **50** | **20** | 20 |
| March 18, 1997 | **10** | **10** | 520 | **50** | **20** | 10 |
| June 18, 1997 | **10** | **10** | 900 | **50** | **20** | 10 |
| September 9, 1997 | **10** | **10** | 730 | **50** | **20** | 10 |
| March 12, 2001 | 0 | 0 | 730 | 0 | 0 | 0 |
| June 6, 2001 | 0 | 0 | **1200** | 0 | 0 | 0 |
| September 11, 2001 | 0 | 0 | **1000** | 0 | 0 | 0 |
| December 10, 2001 | 0 | 0 | 890 | 0 | 0 | 0 |
| March 4, 2002 | 0 | 0 | 580 | 0 | 0 | 0 |
| June 4, 2002 | 0 | 0 | **1000** | 0 | 0 | 0 |
| September 4, 2002 | 0 | 0 | **1300** | 0 | 0 | 0 |
| December 11, 2002 | 0 | 0 | 780 | 0 | 0 | 0 |
| March 4, 2003 | < 10 | < 10 | 540 | < 50 | < 20 | < 10 |
| June 4, 2003 | < 10 | **23** | **1500** | < 50 | < 20 | **52** |
| September 2, 2003 | < 10 | < 10 | **1600** | < 50 | < 20 | < 10 |
| December 1, 2003 | < 10 | < 10 | 810 | < 50 | < 20 | < 10 |
| March 3, 2004 | < 10 | < 10 | 440 | < 50 | < 20 | < 10 |
| June 2, 2004 | < 10 | < 10 | **1400** | < 50 | < 20 | < 10 |
| September 9, 2004 | < 10 | < 10 | **1000** | < 50 | < 20 | 12 |
| December 13, 2004 | < 10 | < 10 | 860 | < 50 | < 20 | < 10 |
| March 8, 2005 | < 10 | < 10 | 470 | < 50 | < 20 | < 10 |
| June 7, 2005 | < 10 | < 10 | 720 | < 50 | < 20 | < 10 |
| September 6, 2005 | < 10 | < 10 | **1700** | < 50 | < 20 | 29 |
| December 1, 2005 | < 10 | < 10 | 800 | < 50 | < 20 | < 10 |
| March 7, 2006 | < 10 | < 10 | 500 | < 50 | < 20 | < 10 |
| June 27, 2006 | < 10 | < 10 | **2700** | < 50 | < 20 | 12 |
| September 7, 2006 | < 10 | < 10 | **1000** | < 50 | < 20 | < 10 |
| December 5, 2006 | < 10 | < 10 | **1000** | < 50 | < 20 | < 10 |
| | | | | | | |
| **Total Recoverable Chronic Toxicity (CCC) Limit** | **0.10** | **2.9** | **1000** | **0.54** | **16** | **37** |

**Values in Red Exceed Chronic Toxicity Water Quality Standard**

* All less than values are listed as Present < PQL

**Attachment C**

# Summary of Water Quality Data

## E-104 Located at North Fork Edisto River at S-38-73 - Slightly Upstream of Confluence - STORET Sample Results*

| Date | Cadmium ug/L | Copper ug/L | Iron ug/L | Lead ug/L | Nickel ug/L | Zinc ug/L |
|---|---|---|---|---|---|---|
| June 8, 1992 | **10** | **10** | 760 | **50** | **20** | **2800** |
| September 17, 1992 | **10** | **10** | 700 | **50** | **20** | 10 |
| December 4, 1996 | **10** | **10** | 450 | **50** | **20** | 10 |
| March 18, 1997 | **10** | **10** | 820 | **50** | **20** | 10 |
| June 18, 1997 | **10** | **10** | 600 | **50** | **20** | 10 |
| September 9, 1997 | **10** | **10** | 480 | **50** | **20** | 10 |
| March 12, 2001 | 0 | 0 | 370 | 0 | 0 | 0 |
| June 6, 2001 | 0 | 0 | 700 | 0 | 0 | 0 |
| September 11, 2001 | 0 | 0 | 550 | 0 | 0 | 0 |
| December 10, 2001 | 0 | 0 | 450 | 0 | 0 | 28 |
| March 4, 2002 | 0 | 0 | 450 | 0 | 0 | 0 |
| June 4, 2002 | 0 | 0 | 550 | 0 | 0 | 0 |
| September 4, 2002 | 0 | 0 | 680 | 0 | 0 | 0 |
| December 11, 2002 | 0 | 0 | 340 | 0 | 0 | 0 |
| March 4, 2003 | < 10 | < 10 | 410 | < 50 | < 20 | < 10 |
| June 4, 2003 | < 10 | < 10 | 990 | < 50 | < 20 | 16 |
| September 2, 2003 | < 10 | < 10 | **1400** | < 50 | < 20 | **66** |
| December 1, 2003 | < 10 | < 10 | 540 | < 50 | < 20 | 22 |
| March 3, 2004 | < 10 | < 10 | 280 | < 50 | < 20 | < 10 |
| June 2, 2004 | < 10 | < 10 | 780 | < 50 | < 20 | < 10 |
| September 9, 2004 | < 10 | < 10 | 870 | < 50 | < 20 | < 10 |
| December 13, 2004 | < 10 | < 10 | 580 | < 50 | < 20 | < 10 |
| March 8, 2005 | < 10 | < 10 | 200 | < 50 | < 20 | < 10 |
| June 7, 2005 | < 10 | < 10 | 940 | < 50 | < 20 | < 10 |
| September 6, 2005 | < 10 | < 10 | 810 | < 50 | < 20 | 31 |
| December 1, 2005 | < 10 | < 10 | 430 | < 50 | < 20 | < 10 |
| March 7, 2006 | < 10 | < 10 | 220 | < 50 | < 20 | < 10 |
| June 27, 2006 | < 10 | < 10 | 850 | < 50 | < 20 | 14 |
| September 7, 2006 | < 10 | < 10 | 640 | < 50 | < 20 | < 10 |
| December 5, 2006 | < 10 | < 10 | 440 | < 50 | < 20 | < 10 |
| | | | | | | |
| **Total Recoverable Chronic Toxicity (CCC) Limit** | **0.10** | **2.9** | **1000** | **0.54** | **16** | **37** |

**Values in Red Exceed Chronic Toxicity Water Quality Standard**

* All less than values are listed as Present < PQL

# Attachment D

# Attachment E

# Summary of Water Quality Data

## E-008A Located on the North Edisto River at State Road 38-63 - 40 Miles Downstream of Confluence - STORET Sample Results*

| Date | Cadmium ug/L | Copper ug/L | Iron ug/L | Lead ug/L | Nickel ug/L | Zinc ug/L |
|---|---|---|---|---|---|---|
| June 17, 1992 | **10** | **10** | 820 | **50** | **20** | 10 |
| September 8, 1992 | **10** | **10** | 960 | **50** | **20** | 10 |
| December 5, 1996 | **10** | **10** | 360 | **50** | **20** | 10 |
| March 19, 1997 | **10** | **10** | 680 | **50** | **20** | 10 |
| June 18, 1997 | **10** | **10** | 560 | **50** | **20** | 10 |
| September 15, 1997 | **10** | **10** | 530 | **50** | **20** | 10 |
| March 22, 2001 | 0 | 0 | 470 | 0 | 0 | 0 |
| June 14, 2001 | 0 | 0 | 760 | 0 | 0 | 14 |
| September 20, 2001 | 0 | 0 | 430 | 0 | 0 | 0 |
| December 13, 2001 | 0 | **15** | 550 | 0 | 0 | 10 |
| March 6, 2002 | 0 | 0 | 360 | 0 | 0 | 0 |
| June 3, 2002 | 0 | 0 | 700 | 0 | 0 | 12 |
| September 3, 2002 | 0 | 0 | 700 | 0 | 0 | 0 |
| December 2, 2002 | 0 | 0 | 620 | 0 | 0 | 35 |
| March 18, 2003 | < 10 | < 10 | 290 | < 50 | < 20 | < 10 |
| June 10, 2003 | < 10 | < 10 | **1400** | < 50 | < 20 | 11 |
| September 4, 2003 | < 10 | < 10 | **1900** | < 50 | < 20 | < 10 |
| December 11, 2003 | < 10 | < 10 | 680 | < 50 | < 20 | < 10 |
| March 10, 2004 | < 10 | < 10 | 500 | < 50 | < 20 | < 10 |
| June 21, 2004 | < 10 | < 10 | **1200** | < 50 | < 20 | < 10 |
| September 22, 2004 | < 10 | < 10 | **1200** | < 50 | < 20 | < 10 |
| March 14, 2005 | < 10 | < 10 | 400 | < 50 | < 20 | 12 |
| June 20, 2005 | < 10 | < 10 | **1200** | < 50 | < 20 | 18 |
| September 13, 2005 | < 10 | < 10 | 740 | < 50 | < 20 | 14 |
| December 12, 2005 | < 10 | < 10 | 510 | < 50 | < 20 | < 10 |
| March 6, 2006 | < 10 | < 10 | 570 | < 50 | < 20 | < 10 |
| June 7, 2006 | < 10 | < 10 | 890 | < 50 | < 20 | 18 |
| September 6, 2006 | < 10 | < 10 | 830 | < 50 | < 20 | < 10 |
| December 13, 2006 | < 10 | **11** | 570 | < 50 | < 20 | **160** |
| **Total Recoverable Chronic Toxicity (CCC) limit** | **0.1** | **2.9** | **1000** | **0.54** | **16** | **37** |

**Values in Red Exceed Chronic Toxicity Water Quality Standard**

* All less than values are listed as Present < PQL

## Summary of Water Quality Data

**E-086 located on the Edisto River, 9.5 miles southeast of St. George - 90 Miles Downstream of Confluence - STORET Sample Results***

| Date | Cadmium ug/L | Copper ug/L | Iron ug/L | Lead ug/L | Nickel ug/L | Zinc ug/L |
|---|---|---|---|---|---|---|
| July 30, 1992 | 10 | 10 | 990 | 50 | 20 | 10 |
| October 22, 1992 | 10 | 10 | 1000 | 50 | 20 | 10 |
| January 14, 1993 | 10 | 10 | 830 | 50 | 20 | 40 |
| April 7, 1993 | 10 | 10 | 810 | 50 | 20 | 10 |
| July 12, 1993 | 10 | 10 | 930 | 50 | 20 | 30 |
| October 25, 1993 | 10 | 10 | 320 | 50 | 20 | 10 |
| October 25, 1993 | 10 | 10 | 860 | 50 | 20 | 10 |
| January 12, 1994 | 10 | 30 | 430 | 50 | 20 | 10 |
| April 21, 1994 | 10 | 10 | 1100 | 50 | 20 | 10 |
| July 18, 1994 | 10 | 10 | 980 | 50 | 20 | 10 |
| October 7, 1994 | 10 | 10 | 800 | 50 | 20 | 10 |
| January 19, 1995 | 10 | 10 | 730 | 50 | 20 | 10 |
| April 5, 1995 | 10 | 10 | 1100 | 50 | 20 | 10 |
| July 20, 1995 | 10 | 10 | 1000 | 50 | 20 | 10 |
| October 11, 1995 | 10 | 10 | 1600 | 50 | 20 | 70 |
| January 11, 1996 | 10 | 10 | 540 | 50 | 20 | 10 |
| July 23, 1996 | 10 | 10 | 820 | 50 | 20 | 20 |
| October 31, 1996 | 10 | 10 | 570 | 50 | 20 | 20 |
| January 16, 1997 | 10 | 10 | 710 | 50 | 20 | 10 |
| April 3, 1997 | 10 | 10 | 980 | 50 | 20 | 10 |
| July 22, 1997 | 10 | 10 | 810 | 50 | 20 | 10 |
| October 7, 1997 | 10 | 10 | 730 | 50 | 20 | 10 |
| January 12, 1998 | 10 | 10 | 610 | 50 | 20 | 20 |
| April 2, 1998 | 10 | 10 | 870 | 50 | 20 | 10 |
| July 20, 1998 | 10 | 10 | 750 | 50 | 20 | 10 |
| October 6, 1998 | 10 | 10 | 1100 | 50 | 20 | 10 |
| January 21, 1999 | 0 | 0 | 420 | 0 | 0 | 0 |
| April 29, 1999 | 0 | 0 | 900 | 0 | 0 | 30 |
| July 8, 1999 | 0 | 0 | 1200 | 0 | 0 | 0 |
| October 19, 1999 | 0 | 0 | 810 | 0 | 0 | 0 |
| January 24, 2000 | 0 | 0 | 460 | 0 | 0 | 20 |
| April 19, 2000 | 0 | 10 | 900 | 0 | 0 | 20 |
| July 20, 2000 | 0 | 0 | 590 | 0 | 0 | 0 |
| October 25, 2000 | 0 | 0 | 540 | 0 | 0 | 0 |
| January 16, 2001 | 0 | 0 | 860 | 0 | 0 | 0 |
| April 30, 2001 | 0 | 0 | 890 | 0 | 0 | 0 |
| July 16, 2001 | 0 | 0 | 760 | 0 | 0 | 0 |
| October 3, 2001 | 0 | 0 | 470 | 0 | 0 | 0 |
| January 31, 2002 | 0 | 0 | 580 | 0 | 0 | 16 |
| April 1, 2002 | 0 | 0 | 570 | 0 | 0 | 0 |
| July 24, 2002 | 0 | 0 | 570 | 0 | 0 | 17 |
| October 21, 2002 | 0 | 0 | 1000 | 0 | 0 | 27 |
| January 29, 2003 | <10 | <10 | 450 | <50 | <20 | 12 |
| April 24, 2003 | <10 | <10 | 1200 | <50 | <20 | <10 |
| July 1, 2003 | <10 | <10 | 1500 | <50 | <20 | <10 |
| October 2, 2003 | <10 | <10 | 1600 | <50 | <20 | 12 |
| January 8, 2004 | <10 | <10 | 690 | <50 | <20 | <10 |
| April 28, 2004 | <10 | <10 | 780 | <50 | <20 | <10 |
| July 14, 2004 | <10 | <10 | 1200 | <50 | <20 | 10 |
| October 18, 2004 | <10 | <10 | 960 | <50 | <20 | <10 |
| January 5, 2005 | <10 | <10 | 410 | <50 | <20 | <10 |
| April 25, 2005 | <10 | <10 | 940 | <50 | <20 | <10 |
| July 6, 2005 | <10 | <10 | 1200 | <50 | <20 | 12 |
| October 4, 2005 | <10 | <10 | 800 | <50 | <20 | <10 |
| January 4, 2006 | <10 | <10 | 680 | <50 | <20 | 18 |
| April 13, 2006 | <10 | <10 | 1000 | <50 | <20 | 15 |
| July 18, 2006 | <10 | <10 | 820 | <50 | <20 | 31 |
| October 5, 2006 | <10 | <10 | 830 | <50 | <20 | 13 |
| **Total Recoverable Chronic Toxicity (CCC) Limit** | 0.1 | 2.9 | 1000 | 0.54 | 16 | 37 |

**Values in Red Exceed Chronic Toxicity Water Quality Standard**

* All less than values are listed as Present < PQL

**Attachment F**

## Summary of Water Quality Data

### E-015 located on the Edisto River at State Road 61 - 105 Miles Downstream of Confluence - STORET Sample Results*

| Date | Cadmium ug/L | Copper ug/L | Iron ug/L | Lead ug/L | Nickel ug/L | Zinc ug/L |
|---|---|---|---|---|---|---|
| January 15, 1992 | 10 | 10 | 590 | 50 | 20 | 10 |
| April 21, 1992 | 10 | 10 | 750 | 50 | 20 | No Data |
| July 30, 1992 | 10 | 10 | 880 | 50 | 20 | 20 |
| October 22, 1992 | 10 | 10 | 910 | 50 | 20 | 10 |
| January 14, 1993 | 10 | 10 | 570 | 50 | 20 | 30 |
| April 7, 1993 | 10 | 10 | 710 | 50 | 20 | 10 |
| July 12, 1993 | 10 | 10 | 830 | 50 | 20 | 10 |
| October 25, 1993 | 10 | 10 | 750 | 50 | 20 | 10 |
| January 12, 1994 | 10 | 20 | 360 | 50 | 20 | 10 |
| April 21, 1994 | 10 | 10 | 1000 | 50 | 20 | 10 |
| July 18, 1994 | 10 | 10 | 910 | 50 | 20 | 10 |
| October 7, 1994 | 10 | 10 | 310 | 50 | 20 | 20 |
| January 19, 1995 | 10 | 10 | 660 | 50 | 20 | 10 |
| April 5, 1995 | 10 | 10 | 1000 | 50 | 20 | 10 |
| July 20, 1995 | 10 | 20 | 910 | 50 | 20 | 10 |
| January 11, 1996 | 10 | 10 | 520 | 50 | 20 | 10 |
| July 23, 1996 | 10 | 10 | 710 | 50 | 20 | 10 |
| October 31, 1996 | 10 | 10 | 1000 | 50 | 20 | 10 |
| January 16, 1997 | 10 | 10 | 510 | 50 | 20 | 10 |
| April 3, 1997 | 10 | 10 | 910 | 50 | 20 | 70 |
| July 22, 1997 | 10 | 10 | 760 | 50 | 20 | 10 |
| October 7, 1997 | 10 | 10 | 770 | 50 | 20 | 20 |
| January 12, 1998 | 10 | 10 | 500 | 50 | 20 | 20 |
| April 2, 1998 | 10 | 10 | 1000 | 50 | 20 | 10 |
| July 20, 1998 | 10 | 10 | 660 | 50 | 20 | 20 |
| October 6, 1998 | 10 | 10 | 1100 | 50 | 20 | 10 |
| January 21, 1999 | 0 | 0 | 380 | 0 | 0 | 0 |
| April 29, 1999 | 0 | 0 | 710 | 0 | 0 | 20 |
| July 8, 1999 | 0 | 0 | 1300 | 0 | 0 | 20 |
| October 19, 1999 | 0 | 0 | 850 | 0 | 0 | 0 |
| January 24, 2000 | 0 | 0 | 440 | 0 | 0 | 10 |
| April 19, 2000 | 0 | 0 | 920 | 0 | 0 | 20 |
| July 20, 2000 | 0 | 0 | 750 | 0 | 0 | 20 |
| October 25, 2000 | 0 | 0 | 470 | 0 | 0 | 0 |
| January 16, 2001 | 0 | 0 | 340 | 0 | 0 | 0 |
| April 30, 2001 | 0 | 0 | 1800 | 0 | 0 | 0 |
| July 16, 2001 | 0 | 0 | 920 | 0 | 0 | 38 |
| October 3, 2001 | 0 | 0 | 580 | 0 | 0 | 23 |
| January 31, 2002 | 0 | 0 | 880 | 0 | 0 | 14 |
| April 1, 2002 | 0 | 0 | 680 | 0 | 0 | 19 |
| July 24, 2002 | 0 | 0 | 530 | 0 | 0 | 0 |
| October 21, 2002 | 11 | 0 | 1400 | 0 | 0 | 41 |
| January 29, 2003 | < 10 | < 10 | 450 | < 50 | < 20 | < 10 |
| April 24, 2003 | < 10 | < 10 | 1000 | < 50 | < 20 | < 10 |
| July 1, 2003 | < 10 | < 10 | 1400 | < 50 | < 20 | 30 |
| October 2, 2003 | < 10 | < 10 | 1300 | < 50 | < 20 | 11 |
| January 8, 2004 | < 10 | < 10 | 560 | < 50 | < 20 | < 10 |
| April 28, 2004 | < 10 | < 10 | 710 | < 50 | < 20 | < 10 |
| July 7, 2004 | < 10 | < 10 | 1200 | < 50 | < 20 | 31 |
| October 18, 2004 | < 10 | < 10 | 750 | < 50 | < 20 | < 10 |
| January 5, 2005 | < 10 | < 10 | 490 | < 50 | < 20 | < 10 |
| April 25, 2005 | < 10 | < 10 | 1100 | < 50 | < 20 | 17 |
| July 6, 2005 | < 10 | < 10 | 1100 | < 50 | < 20 | 15 |
| October 4, 2005 | < 10 | < 10 | 800 | < 50 | < 20 | 26 |
| January 4, 2006 | < 10 | < 10 | 440 | < 50 | < 20 | < 10 |
| April 13, 2006 | < 10 | < 10 | 850 | < 50 | < 20 | 11 |
| July 18, 2006 | < 10 | < 10 | 560 | < 50 | < 20 | < 10 |
| October 5, 2006 | < 10 | < 10 | 790 | < 50 | < 20 | 18 |
| **Total Recoverable Chronic Toxicity (CCC)Limit** | 0.1 | 2.9 | 1000 | 0.54 | 16 | 37 |

**Values in Red Exceed Chronic Toxicity Water Quality Standard**

\* All less than values are listed as Present < PQL

**Attachment G**



Water Discharge Permits (PCS)

You are here: EPA Home    Envirofacts    PCS    Query Results

http://oaspub.epa.gov/enviro/ad_hoc_build_sql1.get_table
Last updated on Wednesday, September 10th, 2008.

## **Query Results**



PCS    **Page No. 1**

NPDES# Equal to SC0034541
Effluent Violation Code for Parameter Measurement: In D20, E01, E11, E21, E31, E41, E51, E90
Monitoring Period End Date: Starting From Jan-01-1995

Results are based on data extracted on 16-APR-08

Generated SQL

SELECT DISTINCT PCS_DMR_MEASUREMENT.CONCENTR_AVG, PCS_DMR_MEASUREMENT.CONCENTR_MAX,
PCS_DMR_MEASUREMENT.CONCENTR_MIN, PCS_DMR_MEASUREMENT.DISCHARGE_NUM,
PCS_DMR_MEASUREMENT.MEAS_VIOL_CODE, to_char(PCS_DMR_MEASUREMENT.MONITORING_PERIOD_END_DATE, 'YYYY-MM-
DD'), PCS_DMR_MEASUREMENT.PARAM_CODE, PCS_DMR_MEASUREMENT.QTY_AVG, PCS_DMR_MEASUREMENT.QTY_MAX from
PCS_PERMIT_FACILITY , PCS_DMR_MEASUREMENT where PCS_PERMIT_FACILITY.npdes = 'SC0034541' and
(PCS_DMR_MEASUREMENT.MEAS_VIOL_CODE in ('D20','E01','E11','E21','E31','E41','E51','E90')) and
(PCS_DMR_MEASUREMENT.MONITORING_PERIOD_END_DATE >= to_date('Jan-01-1995', 'MON-DD-YYYY')) and
PCS_DMR_MEASUREMENT.npdes = PCS_PERMIT_FACILITY.npdes order by to_char
(PCS_DMR_MEASUREMENT.MONITORING_PERIOD_END_DATE, 'YYYY-MM-DD') asc , PCS_DMR_MEASUREMENT.PARAM_CODE asc ,
PCS_DMR_MEASUREMENT.DISCHARGE_NUM asc

| Monitoring Period End Date | Discharge Number | Parameter Code | Code Expansion for Parameter Code | Effluent Violation Code for Parameter Measurement | Concentration Average Value | Concentration Maximum Value | Concentration Minimum Value | Quantity Average Value | Quantity Maximum Value |
|---|---|---|---|---|---|---|---|---|---|
| 31-JAN-1997 | 001 | 00310 | BOD, 5-DAY (20 DEG. C) | D20 | | | | | |
| 31-JAN-1997 | 001 | 00400 | PH | D20 | | | | | |
| 31-JAN-1997 | 001 | 00530 | SOLIDS, TOTAL SUSPENDED | D20 | | | | | |
| 31-JAN-1997 | 001 | 00556 | OIL AND GREASE FREON EXTR-GRAV METH | D20 | | | | | |
| 31-JAN-1997 | 001 | 01027 | CADMIUM, TOTAL (AS CD) | D20 | | | | | |
| 31-JAN-1997 | 001 | 01042 | COPPER, TOTAL (AS CU) | D20 | | | | | |
| 31-JAN-1997 | 001 | 01045 | IRON, TOTAL (AS FE) | D20 | | | | | |
| 31-JAN-1997 | 001 | 01051 | LEAD, TOTAL (AS PB) | D20 | | | | | |
| 31-JAN-1997 | 001 | 01067 | NICKEL, TOTAL (AS NI) | D20 | | | | | |
| 31-JAN-1997 | 001 | 01092 | ZINC, TOTAL (AS ZN) | D20 | | | | | |
| 31-JAN-1997 | 001 | 39516 | POLYCHLORINATED BIPHENYLS (PCBS) | D20 | | | | | |
| 31-JAN-1997 | 001 | 50050 | FLOW, IN CONDUIT OR THRU TREATMENT PLANT | D20 | | | | | |
| 31-JAN-1997 | 001 | 71900 | MERCURY, TOTAL (AS HG) | D20 | | | | | |
| 31-JAN-1997 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | D20 | | | | | |
| 30-APR-1997 | 001 | 00310 | BOD, 5-DAY (20 DEG. C) | D20 | | | | | |
| 30-APR-1997 | 001 | 00400 | PH | D20 | | | | | |
| 30-APR-1997 | 001 | 00530 | SOLIDS, TOTAL SUSPENDED | D20 | | | | | |
| 30-APR-1997 | 001 | 00556 | OIL AND GREASE FREON EXTR-GRAV METH | D20 | | | | | |
| 30-APR-1997 | 001 | 01027 | CADMIUM, TOTAL (AS CD) | D20 | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 30-APR-1997 | 001 | 01042 | COPPER, TOTAL (AS CU) | D20 | | | | | |
| 30-APR-1997 | 001 | 01045 | IRON, TOTAL (AS FE) | D20 | | | | | |
| 30-APR-1997 | 001 | 01051 | LEAD, TOTAL (AS PB) | D20 | | | | | |
| 30-APR-1997 | 001 | 01067 | NICKEL, TOTAL (AS NI) | D20 | | | | | |
| 30-APR-1997 | 001 | 01092 | ZINC, TOTAL (AS ZN) | D20 | | | | | |
| 30-APR-1997 | 001 | 39516 | POLYCHLORINATED BIPHENYLS (PCBS) | D20 | | | | | |
| 30-APR-1997 | 001 | 50050 | FLOW, IN CONDUIT OR THRU TREATMENT PLANT | D20 | | | | | |
| 30-APR-1997 | 001 | 71900 | MERCURY, TOTAL (AS HG) | D20 | | | | | |
| 30-APR-1997 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | D20 | | | | | |
| 31-MAY-1998 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 31-JUL-1998 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 31-AUG-1998 | 001 | 00556 | OIL AND GREASE FREON EXTR-GRAV METH | E90 | 12.6 | 63 | | | |
| 31-AUG-1998 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 30-SEP-1998 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 31-JAN-1999 | 001 | 01092 | ZINC, TOTAL (AS ZN) | E90 | 0.065 | 0.09 | | | |
| 28-FEB-1999 | 001 | 01027 | CADMIUM, TOTAL (AS CD) | E90 | 2.9 | 4.3 | | | |
| 28-FEB-1999 | 001 | 01042 | COPPER, TOTAL (AS CU) | E90 | < 10 | 17.6 | | | |
| 28-FEB-1999 | 001 | 01051 | LEAD, TOTAL (AS PB) | E90 | < 5 | 6.6 | | | |
| 28-FEB-1999 | 001 | 01092 | ZINC, TOTAL (AS ZN) | E90 | 0.060 | 0.091 | | | |
| 28-FEB-1999 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 30-APR-1999 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 30-JUN-1999 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 31-JUL-1999 | 001 | 00556 | OIL AND GREASE FREON EXTR-GRAV METH | E90 | < 5 | 24 | | | |
| 31-OCT-1999 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 31-DEC-1999 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 31-JAN-2000 | 001 | TGP3B | P/F STATRE 7DAY CHR CERIODAPHNIA | E90 | | 1 | | | |
| 31-MAR-2000 | 001 | 00552 | OIL AND GREASE, HEXANE EXTR METHOD | E90 | < 5 | 28 | | | |
| 30-SEP-2005 | 001 | 00400 | PH | D20 | | | | | |
| 30-SEP-2005 | 001 | 00530 | SOLIDS, TOTAL SUSPENDED | D20 | | | | | |
| 30-SEP-2005 | 001 | 01042 | COPPER, TOTAL (AS CU) | D20 | | | | | |
| 30-SEP-2005 | 001 | 01051 | LEAD, TOTAL (AS PB) | D20 | | | | | |
| 30-SEP-2005 | 001 | 01067 | NICKEL, TOTAL (AS NI) | D20 | | | | | |
| | | | FLOW, IN CONDUIT | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 30-SEP-2005 | 001 | 50050 | OR THRU TREATMENT PLANT | D20 | | | | | |
| 31-OCT-2005 | 001 | 01042 | COPPER, TOTAL (AS CU) | E90 | 0.0189 | 0.049 | | | |
| 31-OCT-2007 | 001 | 00400 | PH | D20 | | | | | |
| 31-OCT-2007 | 001 | 00530 | SOLIDS, TOTAL SUSPENDED | D20 | | | | | |
| 31-OCT-2007 | 001 | 01042 | COPPER, TOTAL (AS CU) | D20 | | | | | |
| 31-OCT-2007 | 001 | 01051 | LEAD, TOTAL (AS PB) | D20 | | | | | |
| 31-OCT-2007 | 001 | 01067 | NICKEL, TOTAL (AS NI) | D20 | | | | | |
| 31-OCT-2007 | 001 | 50050 | FLOW, IN CONDUIT OR THRU TREATMENT PLANT | D20 | | | | | |
| 31-DEC-2007 | 001 | 00400 | PH | D20 | | | | | |
| 31-DEC-2007 | 001 | 00530 | SOLIDS, TOTAL SUSPENDED | D20 | | | | | |
| 31-DEC-2007 | 001 | 01042 | COPPER, TOTAL (AS CU) | D20 | | | | | |
| 31-DEC-2007 | 001 | 01051 | LEAD, TOTAL (AS PB) | D20 | | | | | |
| 31-DEC-2007 | 001 | 50050 | FLOW, IN CONDUIT OR THRU TREATMENT PLANT | D20 | | | | | |

Total number of records returned from your query: 64
Number of Records shown on this page: 64

Output to CSV File



http://oaspub.epa.gov/enviro/ad_hoc_build_sql1.get_table
Last updated on Monday, September 29th, 2008.

# Water Discharge Permits (PCS)

You are here: **EPA Home**    **Envirofacts**    **PCS**    Query

PCS

### PCS EZ Code List Retrieval

| | Codes | Descriptions |
|---|---|---|
| ☐ | D10 | DMR OVERDUE (EPA) OVERDUE |
| ☐ | D20 | DMR OVERDUE (STATE) OVERDUE |
| ☐ | D30 | DMR OVERDUE (EPA/ST) OVERDUE |
| ☐ | E00 | MEASUREMENT ONLY, NO VIOLATION NO VIOL |
| ☐ | E01 | MONITOR ONLY, QUANTITY ABSENT QTY ABS |
| ☐ | E11 | MONITOR ONLY, CONC ABSENT CONC ABS |
| ☐ | E21 | MONITOR ONLY, QTY/CONC ABSENT QTY/CONC ABS |
| ☐ | E31 | LIMITED, QUANTITY ABSENT QTY ABS |
| ☐ | E41 | LIMITED, CONCENTRATION ABSENT CONC ABS |
| ☐ | E51 | LIMITED, QTY/CONC ABSENT QTY/CONC ABS |
| ☐ | E90 | NUMERIC VIOLATION NUMERIC VIOL |

[ Return to Query Form with Selected Codes ]    [ Reset ]

**Attachment H**

**South Carolina Department of Health and Environmental Control documents showing Gaston Copper's permit violations and unsatisfactory ratings, 2003 to present**

| Bates number | Date | Description of document |
|---|---|---|
| DHEC 1 - 2 | 7/21/03 | Notice of Violation: violation of reporting requirements of NPDES permit |
| DHEC 3 | 2/3/04 | Wastewater Treatment Plant Facility Evaluation Inspection Report: Unsatisfactory rating for Housekeeping |
| DHEC 4 - 9 | 12/16/04 | Compliance Sampling Inspection: Unsatisfactory rating for Storm Water |
| DHEC 10 - 11 | 6/29/05 | Wastewater Treatment Plant Facility Evaluation Inspection Report: Unsatisfactory rating for Housekeeping |
| DHEC 12 | 12/30/05 | Notice of Violation: failure to comply with effluent limits of NPDES Permit for copper |
| DHEC 13 - 16 | 10/3/06 | Notice of Alleged Violation/Notice of Enforcement Conference regarding alleged violations of Pollution Control Act |
| DHEC 17 | 3/5/07 | Notice of Violation - failure to submit interim report of progress concerning compliance with copper and lead limitations |
| DHEC 18 - 27 | 6/6/07 | Consent Order regarding alleged violations of Pollution Control Act |
| DHEC 28-29 | 6/12/07 | Wastewater Treatment Plant Facility Evaluation Inspection Report: Unsatisfactory rating for Floor Sump Pump |
| DHEC 30 | 6/12/07 | Wastewater Treatment Plant Facility Evaluation Report: Unsatisfactory rating for Housekeeping |



**D·H·E·C**

PROMOTE PROTECT PROSPER

2600 Bull Street
Columbia, SC 29201-1708

COMMISSIONER:
C. Earl Hunter

July 21, 2003

BOARD:
Bradford W. Wyche
Chairman

Mark B. Kent
Vice Chairman

Howard L. Brilliant, MD
Secretary

Carl L. Brazell

Louisiana W. Wright

L. Michael Blackmon

Larry R. Chewning, Jr., DMD

CERTIFIED MAIL - 7001 2510 0008 6163 7531
RETURN RECEIPT REQUESTED

Mr. John Stephens
Vice President
Gaston Copper Recycling Corp.
Post Office Box 318
Gaston, SC 29053

RE:  Notice of Violation        03-63-34541-287
     Gaston Copper Recycling Corp..
     NPDES Permit SC0034541
     Lexington County

Dear Mr. Stephens:

A review of the file for the referenced facility has found Gaston Copper Recycling Corp. (Gaston Copper) to be in violation of the reporting requirements of the NPDES Permit. Due to errors, discharge monitoring reports (DMRs) for the November 2002, January 2003, and May 2003 monitoring periods had to be returned for correction.

You are hereby notified that failure to comply with the reporting requirements of the NPDES Permit is a violation of the Pollution Control Act, S.C. Code Ann. 48-1-110(d) (1987) and Water Pollution Control Permits, 24 S.C. Code Ann. Regs. 61-9.122.41(j)(3) (1998). The violations make Gaston Copper subject to further enforcement action, which may include assessment of civil penalties as set forth in the Pollution Control Act, S.C. Code Ann. 48-1-330 (1987).

You are requested to submit a written response within ten (10) days of receipt of this notice. Your response should include an explanation for the violations cited above, and measures that have been or will be taken to ensure compliance with permit conditions. This response will not relieve Gaston Copper of responsibility for the violations cited.

**DHEC 1**

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL

If you have any questions concerning this notice, you may call me at (803) 898-4181. I will be glad to assist you.

Sincerely,

Sandra L. Hursey
Compliance Officer
Water Pollution Enforcement Section
Bureau of Water

cc: Central Midlands EQC District Office



**D H E C**

South Carolina Department of Health
and Environmental Control

# WASTEWATER TREATMENT PLANT
# FACILITY EVALUATION INSPECTION
# REPORT

C. Midlands EQC District
Bldg. # 5, PO Box 156
State Park, SC 29147
803.896.0620
803.896.0617 - Fax

---

NPDES# No NPDES Permit # (Sanitary Sewage)    **Outfall: 002**    **Last Inspection Date: 07/19/00**
Construction Permit # 4301

Facility Name: Gaston Copper Recycling Corporation    Type of Inspection: Initial FEI

Gaston Copper Recycling Corporation    Effective Permit Dates: n/a
Mr. John Stephens
P.O. Box 318
Gaston, SC 29053    (803) 796-4720    Operator of Record: Joe Riley
    A-3063 P/C
County: Lexington    D-12222 Bio

| **Facility Observations** | **Rating** | **Field Parameters** | **Effluent Results** |
|---|---|---|---|
| Permit | No NPDES Permit | pH (SU) | No Discharge |
| Records & Reports | Sat | DO (mg/l) | |
| Operator's Log | Sat | Temp. (dep.C) | |
| Self-Monitoring | Sat | TRC (mg/l) | |
| Operator of Record (Req. D ) | Sat | CL2 in C.C. | |
| Flow Measurement (    ) | | | |
| Bar Screen (Manual) | Sat | | |
| Grinder (Communitor) | Sat | | |
| Grit Removal (    ) | | | |
| Primary Sedimentation (    ) | | | |
| Trickling Filter (    ) | | | |
| Aeration (Continous) (1) | Sat | Pond low-Aerator appears to blow out mud. | |
| Secondary Sedimentation (    ) | | | |
| Digester (    )(    ) | | | |
| Ponds (2) (Aerated & Polishing) | Sat | Polishing pond empty other than rain water | |
| Post Chlorination (    )(    ) | | : | |
| Dechlorination (    )(    ) | | | |
| Sludge Handling (    ) | | | |
| Final Filters (    ) | | | |
| Spray/Tile Field (Perk Field) | Sat | | |
| Housekeeping | Unsat | Trees, Bushes, and vegetation needs to be cut | |
| Sludge Disposal (    ) | | | |
| Other: | | | |

*Note if observations are satisfactory or unsatisfactory.
Weather:    Cloudy
Effluent Appearance:    No Discharge

### Remarks / Comments / Recommendations:

**Vegetation trees and bushes around the ponds and on the free board of the ponds needs to be addressed.**

| Satisfactory | 02/03/04 | 12:55 |
|---|---|---|
| Overall Rating | Date: (mm/dd/yy) | Military Time |
| Joe Riley | Tracey Wilkes | |
| Operator w/ Evaluator | DHEC Field Evaluator | Reviewed By |

This inspection was made to determine the operating condition of the facility, and is not to be interpreted that adequate treatment is being provided.

**DHEC 3**

BOARD:
Elizabeth M. Hagood
Chairman

Mark B. Kent
Vice Chairman

L. Michael Blackmon
Secretary

BOARD:
Edwin H. Cooper, III

Carl L. Brazell

Steven G. Kisner

Coleman F. Buckhouse, MD



**D H E C**

PROMOTE PROTECT PROSPER

C. Earl Hunter, Commissioner
*Promoting and protecting the health of the public and the environment.*

## CERTIFIED MAIL--RETURN RECEIPT REQUESTED

December 16, 2004

John Stephens
Gaston Copper Recycling
P.O. Box 318
Gaston, SC 29053

Re:  Gaston Copper Recycling
     NPDES Permit No. SC0034541
     Lexington County

Dear Mr. Stephens:

Attached are the results of the **Compliance Sampling Inspection** of your wastewater treatment facility performed by DHEC on July 26, 2004 to July 28, 2004. All sampling and analyses were performed in accordance with DHEC Environmental Investigations Standard Operating Procedures and Quality Assurance Manual.

The report notes a deficiency in the **Storm Water** section. It is requested that you respond in writing to this office within fifteen (15) days of receipt of this letter stating what corrective actions will be taken to correct the noted efficiency. Failure to respond or inadequate response will provide a basis for enforcement action.

If you have any questions regarding this inspection, please contact me at (803) 898-4041.

Sincerely,

Debra Boston
Facilities Compliance Manager
Pollution Source Compliance Section
Bureau of Water

Attachment
cc:  District Director
     USEPA
     Enforcement

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL
2600 Bull Street • Columbia, SC 29201 • Phone: (803) 898-3432 • www.scdhec.gov

DHEC 4



**D H E C**

PROMOTE PROTECT PROSPER

South Carolina Department of Health and Environmental Control

# NPDES Compliance Inspection Report

NPDES Permit No.: SC0034541

| | | | |
|---|---|---|---|
| Inspection Type: | Compliance Sampling | Date of Inspection: | 07/27/04 |
| Entry Time: | 1000 | Exit Time: | 1230 |
| Permit Effective Date: | 02/01/00 | Permit Expiration Date: | 08/31/04 |

Name and Location of Facility, (include county):
Gaston Copper Recycling Corporation
Highway #321
Gaston, South Carolina

Lexington County

Name, Title, Telephone No. of On-Site Representative(s):
Mr. Joesph W. Riley, Operator of Record (803) 796-4720

Name and Address of Responsible Official/Title/Telephone No. :
Mr. John Stephens, Vice President
Gaston Copper Recycling Corporation
P.O. Box 318
Gaston, South Carolina 29053

## Areas Evaluated During Inspection*

| | | |
|---|---|---|
| Permit* | Flow Measurement* | Operation and Maintenance* |
| Records/Reports* | Self-Monitoring* | Sludge Handling/Disposal* |
| Facility Site Review* | Compliance Schedules* | Pretreatment |
| Effluent/Receiving Waters* | Laboratory* | Storm Water* |
| Collection System* | Other: | |

| | | | |
|---|---|---|---|
| Name of Inspector: | Tracey Wilkes | District/Section: | Central Midlands |
| Name of District/Section Reviewer: | Larry Boland | Date: | 08/12/04 |
| Signature of PSC Reviewer: | | Date: | 8/24/04 |

**DHEC 5**

## COMPLIANCE SAMPLING INSPECTION
## GASTON COPPER RECYCLING CORPORATION
## WASTEWATER TREATMENT FACILITY
## GASTON, SC
## NPDES NO. SC0034541

On July 27, 2004, personnel from the South Carolina Department of Health and Environmental Control SCDHEC conducted a Compliance Sampling Inspection (CSI) of the Gaston Copper Recycling Corporation, Wastewater Treatment Plant, Gaston, South Carolina. The sampling and inspection team consisting of Mrs. Tracey Wilkes and Mr. Jay Mundy met with facility representative, Mr. Joseph Riley to explain the objectives and procedures of the inspection. All findings made during the inspection were discussed with the representatives in a closing conference. The results of the inspection are as follows:

### PERMIT

This facility is permitted to discharge potable wash down / dust suppression water, ground water monitoring system purge and decon water and treated storm water under NPDES Permit No. SC0034541. The permit became effective on February 1, 2000 and expires on August 31, 2004. A renewal application for this permit is currently under review. The sanitary wastewater treatment plant is permitted under construction permit #4301, however, the facility doesn't have an NPDES permit. This facility is also being considered under the same permit.

Rating: Satisfactory

### RECORDS AND REPORTS

The Permittee's record keeping procedures are consistent with the permit requirements. The June 2004 Discharge Monitoring report was consistent with analytical results submitted. Plant and laboratory records and reports are being maintained for at least three (3) years as required. Records and reports were readily available at the facility. The operations log appears to contain information as required by the permit. Chain of custody records and monitoring records also appear to be complete. The facility's operation and maintenance manual was last updated December 2002. A spill prevention counter control measures plan (SPCC) was last updated in February 2002 and was signed by a south Carolina registered professional engineer, however, the emergency contact information must be updated due to personnel changes. Monthly inspections and required training is being performed as required by the plan. The permittee's best management plan (BMP) is located in their storm water pollution prevention plan.

Rating: Satisfactory
The SPCC plan must be updated due to personnel changes.

### FACILITY SITE REVIEW

This facility has two different wastewater treatment systems. Outfall 001 consist of potable washdown/dust suppression water, ground water monitoring system purge and decon water and treated storm water (Storm water runoff from different process areas around the mill site are collected and treated for metals, plant being dismantled). This treatment system is designed for 1.0 MGD and has a NPDES permit (#SC0034541) to discharge to Boggy Branch to Bull Swamp Creek. Stormwater is collected in two (2) concrete structures; a twenty-one (21) million gallon structure; "Tank One" with seven (7) mixers and one (1) aerator and a three (3) million gallon structure "Tank Two". Treatment processes consist of the following: One (1) manual bar screen, four (4) pH neutralization tanks, two (2) DMP Clarifiers, one (1) 0.36 MGD Clarifier, two (2) 0.60 MGD Unipure Lamella's, two (2) Unipure Reactor Modules, one (1)

Ferrous Chloride Tank, two (2) polymer tanks, one (10 Alum tank, one (1) caustic tank, one (1) 5,000 gallon effluent tank, three (3) sand filters, one (1) sludge filter press, two (2) sludge holding tanks. A filter press processes sludge generated by this facility. The maintenance personnel for the entire complex perform maintenance activities throughout the facility. Standby power is available by an emergency diesel generator. It was noted that the facility does experience hydraulic overloads during heavy rainfall. All treatment units are operational. Discharge from outfall 001 was clear.

The Sanitary Wastewater Treatment facility has very low flows due to the shut down of the manufacturing plant. The pretreatment system consists of a comminutor, which was not in operation at time of inspection but is operational and the manual barscreen was being utilized. After pretreatment, the wastewater enters an oxidation lagoon with one (1) aerator. The aerator was not in operation during this inspection but according to the Operator of Record is operational. At the time of this inspection, there was no discharge from the oxidation pond to the polishing pond. After treatment in the oxidation pond, the wastewater then enters the polishing pond and discharges to two percolation fields. The Permittee's Construction Permit (#5615) for the sanitary treatment system doesn't require any effluent sampling. The sludge was disposed of at the Hickory Hill Landfill. The vegetation around the lagoons had been cut back, as well as, trees and bushes had been removed, however, the vegetation needs to be addressed again.

**Rating:** Satisfactory

## FLOW MEASUREMENT

The treated storm water is measured at a 1.5-foot rectangular weir with end contractions at outfall 001. Flows are continuously recorded using a Miltronics OCM-3 recorder. The weir is level and its top edges are sharp and clean. The facility discharges based upon rainfall received over a period of time. The facility was discharging at the time of this inspection and the discharge was clear. An instantaneous flow measurement was taken to check the calibration of the flow meter. The flow meter was within the 10% allowable range. Operators perform daily flow meter calibration checks. A qualified instrument technician conducts an annual calibration of the secondary devices through the range of expected flows.

**Rating:** Satisfactory

## LABORATORY

The Permittee's on-site laboratory is certified to analyze for pH only (Certification No. 32554). The permittee's pH records appear to be adequate. An Orion 901 pH analyzer is being used for compliance monitoring. Effluent samples are collected and transported to the laboratory for analysis. Records indicate that holding times and daily calibrations are being performed and documented as required by the permit. The Permittee has contracted Shealy Environmental Services (Certification No. 32010) to perform all other analyses required by the permit. The contract laboratory was not evaluated during the inspection, however, chain of custody records and certificate of analyses appear to be satisfactory. The onsite laboratory and glassware appear to be clean and orderly. Laboratory Certification performed a laboratory inspection on January 7, 2003 and any deficiencies have been corrected.

**Rating:** Satisfactory

## PRETREATMENT

This facility is not subject to pretreatment requirements.

## COMPLIANCE SCHEDULES

The Permittee is currently not under a schedule of compliance.

**Rating:** Satisfactory

## SELF-MONITORING

The Permittee's self-monitoring program is in compliance with the NPDES requirements. Effluent composite samples from outfall 001 are collected and analyzed for BOD, TSS, and Metals twice a week and PCB's are analyzed once a year. Composite samples are collected over a 24-hour period of time proportional to the effluent flow rate at one sample (100 ml/aliquot) per 8,643 gallons of flow. As samples are collected, they are refrigerated by an Isco automatic sampler which is being maintained at 4 degrees celsius. Grab effluent samples are collected and analyzed for oil & grease and pH twice a week. Samples appear to be collected at the proper locations, at the required frequencies when discharging.

**Rating:** Satisfactory

## OPERATION AND MAINTENANCE

At the time of the inspection, all treatment units at the industrial wastewater facility were in service and at the sanitary wastewater facility except for the comminutor (utilizing manual barscreen), however it is operational. A certified technician inspects the facility's backflow prevention devices annually. The facility does maintain an emergency generator (Solar 750 kw) that will operate the entire wastewater system should there be a power failure. The generator is exercised on a regular basis and hours of usage are being documented. The Stormwater treatment system's last by-pass was reported to SCDHEC on March 20, 2003. The storm water tank had overflowed on March 20, 2003 due to heavy rainfall. The operators' roster was updated during this inspection due to personnel changes. The third shift continues to be operated by a trainee operator only. Barry Mullinax, BOW Industrial Permitting has approved this activity.

**Rating:** Satisfactory

## SLUDGE DISPOSAL

Sludge from the filter press is stored on-site until analytical results reveal if the sludge is considered hazardous waste or not. If the sludge is hazardous, it is shipped to the Safety Kleen (formerly Laidlaw) Pine Wood Landfill. If the sludge is non-hazardous, it is transported to Richland Northeast Sanitary Landfill.

**Rating:** Satisfactory

## STORM WATER

The facility has established its Storm Water Pollution Prevention Plan (SWP3) and a Best Management Plan (BMP, however since the facility has had personnel changes, the storm water plan must be revised and recertified. The following items must be addressed with in the storm water plan: The pollution prevention plan authorization, signed certification and identify individuals and their responsibilities within the organization that are responsible for assisting in its implementation, maintenance and revisions. Personnel are making quarterly and an annual compliance evaluation, however, the plan also calls for monthly inspections and annual sampling, which have not been performed. Potential sources in the plan have been identified in the plan but needs to be revised due to waste oil no longer being maintained on site. Since this

facility is subject to SARA Title III, Section 313 requirements, the SWP3 must be reviewed and certified by a professional engineer registered in South Carolina. The permittee has a non-storm water discharge certification was signed by Mr. Robert Wells, however, since he is no longer with the company, it is being recommended that a new non-storm water certification be signed by his successor. Also, in the SPCC plan, quantities of potential substances on site need to be documented.

**Rating:** Unsatisfactory
This section is being rated unsatisfactory due annual sampling and monthly inspections not being performed as required by the plan, plan has not been certified by a S.C. professional engineer (required every three years) and plan hasn't been updated.

**Rating:** Satisfactory

<u>CSO/SSO</u>

The operator of record is aware of the Sanitary Sewer Overflow (SSO) requirements should there be an incident. To date, there have been any sanitary sewer overflows. Emergency treatment control procedures are in place. Since there has been personnel changes, and updated is needed.

**Rating:** Satisfactory



# WASTEWATER TREATMENT PLANT
# FACILITY EVALUATION INSPECTION
# REPORT

Region III-EQC Columbia
Bldg. # 5, PO Box 156
State Park, SC 29147
803.896.0620
803.896.0617 - Fax

---

**NPDES#  No NPDES Permit # (Sanitary Sewage)**      **Outfall: 002**      **Last Inspection Date: 02/03/04**
Construction Permit # 4301

Facility Name: Gaston Copper Recycling Corporation                Type of Inspection: Initial FEI

Gaston Copper Recycling Corporation                              Effective Permit Dates: n/a
Mr. John Stephens
P.O. Box 318
Gaston, SC 29053                         (803) 796-4720          Operator of Record:  Joe Riley
                                                                                     A-3063 P/C
County: Lexington                                                                    D-12222 Bio

## Facility Observations          Rating        Field Parameters   Effluent Results

| Facility Observations | Rating | Field Parameters | Effluent Results |
|---|---|---|---|
| Permit | No NPDES Permit | pH (SU) | No Discharge |
| Records & Reports | Sat | DO (mg/l) | |
| Operator's Log | Sat | Temp. (dep.C) | |
| Self-Monitoring | Sat | TRC (mg/l) | |
| Operator of Record (Req. D ) | Sat | CL2 in C.C. | |
| Flow Measurement (     ) | | | |
| Bar Screen (Manual) | Sat | | |
| Grinder (Communitor) | Sat | | |
| Grit Removal (    ) | | | |
| Primary Sedimentation (     ) | | | |
| Trickling Filter (    ) | | | |
| Aeration (Continous) (1) | Unsat | | |
| Secondary Sedimentation (     ) | | | |
| Digester (      ) (     ) | | | |
| Ponds (2) (Aerated & Polishing) | *Sat | | |
| Post Chlorination (        )(     ) | | | |
| Dechlorination (        )(      ) | | | |
| Sludge Handling (          ) | | | |
| Final Filters (     ) | | | |
| Spray/Tile Field (Perk Field) | Sat | | |
| Housekeeping | Unsat | | |
| Sludge Disposal (          ) | | | |
| Other: | | | |

*Note if observations are satisfactory or unsatisfactory.
Weather: Clear    Effluent Appearance: No Discharge

## Remarks / Comments / Recommendations:

The oxidation pond's aerator has not been in operation for 6 weeks, it was reported that a motor has been ordered.  This amount of time for the aerator to be down is unacceptable. Spare parts or spare equipment must be available. Even though there are very few employees on site at Gaston Copper and Sheriff's Department the facility has to be properly operated and maintained until this facility is properly closed out.

Housekeeping needs to be improved.  Overgrown vegetation along the banks of the aerated lagoon must be cut back. The influent flume was filled with debris and surrounded by brush. This must be removed also.

*As stated above, the aerated lagoon is receiving waste, however, the polishing pond is not due to very low flows and evaporation in the aerated lagoon.

DHEC 10

This inspection is being rated satisfactory since the motor for the aerator has been order, however, it is being requested that the permittee notify the Department by July 25, 2005 on the status of the aerator. If the aerator is not running by this date, please submit a corrective action plan by the same date to our fax number, 803-896-0617.

| Satisfactory | 06/29/05 | 1300 |
| --- | --- | --- |
| Overall Rating | Date: (mm/dd/yy) | Military Time |

| Joe Riley | Trent Watford | |
| --- | --- | --- |
| Operator w/ Evaluator | DHEC Field Evaluator | Reviewed By |

This inspection was made to determine the operating condition of the facility, and is not to be interpreted that adequate treatment is being provided.

**DHEC 11**

BOARD:
Elizabeth M. Hagood
Chairman

Edwin H. Cooper, III
Vice Chairman

L. Michael Blackmon
Secretary

BOARD:
Carl L. Brazell

Steven G. Kisner

Paul C. Aughtry, III

Coleman F. Buckhouse, MD



**D H E C**

PROMOTE PROTECT PROSPER

C. Earl Hunter, Commissioner
*Promoting and protecting the health of the public and the environment.*

Lexington Co.

December 30, 2005

**CERTIFIED MAIL 7005 1160 0004 4162 5659**
**RETURN RECEIPT REQUESTED**

Mr. John M Stephens, Vice President
Gaston Copper Recycling Corp
700 Southland Rd
Gaston, South Carolina, 29053

Re:     Notice of Violation                         36592
        Gaston Copper Recycling Corp
        NPDES Permit # SC0034541
        Lexington County

Dear Mr. Stephens:

    A review of the discharge monitoring reports (DMRs) submitted to the Department for the October 2005 monitoring period has revealed the following violations:

| PIPE # | PARAMETER | DATE | LIMIT | DMR | AVG/MAX |
|--------|-----------|------|-------|-----|---------|
| 001 | 01042 COPPER, TOTAL | 10/31/2005 | 0.0177 | 0.0189 | LCAV |
| 001 | 01042 COPPER, TOTAL | 10/31/2005 | 0.024 | 0.049 | LCMX |

    You are hereby notified that failure to comply with the effluent limits of the NPDES Permit is a violation of the Pollution Control Act, S.C. Code Ann. 48-1-110(d) (1987) and Water Pollution Control Permits, 24 S.C. Code Ann. Regs. 61-9.122.41(a) (Supp. 2004). The violations make Gaston Copper Recycling Corp subject to further enforcement action, which may include assessment of civil penalties as set forth in the Pollution Control Act, S.C. Code Ann. 48-1-330 (1987).

    You are requested to submit a written response within ten (10) days of receipt of this notice. **Your response should include an explanation for the violation cited above and measures that have been or will be taken to ensure compliance with permit conditions**. This response, however, will not relieve Gaston Copper Recycling Corp of responsibility for the violations cited.

    If you have any questions concerning this notice, you may call me at 803-898-4262. I will be glad to assist you.

                    Sincerely,

                    *Jaime Teraoka*

                    Jaime Teraoka
                    Environmental Quality Manager
                    Water Pollution Enforcement Section
                    Bureau of Water

cc:     Columbia EQC Office

**DHEC 12**

BOARD:
Elizabeth M. Hagood
Chairman

Edwin H. Cooper, III
Vice Chairman

Steven G. Kisner
Secretary

BOARD:
Henry C. Scott

Paul C. Aughtry, III

Glenn A. McCall

Coleman F. Buckhouse, MD



**D H E C**
PROMOTE PROTECT PROSPER

*Suspense*

C. Earl Hunter, Commissioner
*Promoting and protecting the health of the public and the environment.*

October 3, 2006

<u>Certified Mail</u> – **7001 2510 0008 4159 2249**
<u>**Return Receipt Requested**</u>

Mr. Greg McKibben
Southwire
Patewood Plaza One, Suite 100
30 Patewood Drive
Greenville, SC 29615-3535

Re:  **Notice of Alleged Violation / Notice of Enforcement Conference**
     Gaston Copper Recycling Corporation
     NPDES Permit SC0034541
     Lexington County

Dear Mr. McKibben:

Please find enclosed a Notice of Alleged Violation/Notice of Enforcement Conference for Gaston Copper Recycling Corporation (Respondent).

This Notice is based upon a review of the NPDES Permit and compliance files and field inspection performed by Department personnel. The scheduled enforcement conference will provide the Respondent and the Department the opportunity to discuss the alleged violations. Please plan to attend the conference or ensure that a representative authorized to speak on behalf of the Respondent attends.

Also enclosed is a document entitled *A Guide through the Administrative Enforcement Process*. If you have any questions regarding this matter, please telephone me at (803) 898-4273.

Sincerely,

*Robert L Proctor*

Robert L. "Lee" Proctor
Project Manager
Water Pollution Enforcement Section
Water Enforcement Division
Bureau of Water

cc:  Jaime Teraoka, WP Enforcement/Compliance Section
     Sonya Johnson, Region III-Columbia EQC Office
     Maria Berry, BOW-Industrial Wastewater Permitting Section

<u>SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL</u>
2600 Bull Street • Columbia, SC 29201 • Phone: (803) 898-3432 • www.scdhec.gov

**DHEC 13**

## IN RE:  GASTON COPPER RECYCLING CORPORATION
## LEXINGTON COUNTY

### NOTICE OF ALLEGED VIOLATION/NOTICE OF ENFORCEMENT CONFERENCE

Gaston Copper Recycling Corporation (Respondent) is hereby notified that an enforcement conference has been scheduled for Tuesday, October 24, 2006, at 1:00 PM in the offices of the Bureau of Water, Room 4380 Aycock Building, 2600 Bull Street, Columbia, South Carolina. Representatives of the Respondent have the opportunity to be present at this conference to discuss the alleged violations of the <u>Pollution Control Act</u> and <u>Water Pollution Control Permits</u> cited herein.

Representatives of the Respondent may be accompanied at the conference by legal and/or technical counsel. The possibility of a Consent Order may be discussed.

This Notice is based upon the following findings of the Department:

1.  The Respondent owns and is responsible for the proper operation and maintenance of a storm water and groundwater treatment system, which includes two (2) storage tanks, located at 700 Southbound Road (Site), in the Town of Gaston, Lexington County, South Carolina. Tank 1 has a storage capacity of 22 million gallons and Tank 2 has a storage capacity of 3 million gallons. Tank 2 is equipped with an overflow valve to Tank 1.

2.  Department issued National Pollutant Discharge Elimination System (NPDES) Permit authorizing the Respondent to discharge treated groundwater and storm water into Fallaw's Pond to Boggy Branch to Bull Swamp Creek to the North Fork of the Edisto River in accordance with effluent limitations, monitoring requirements and other permit conditions.

3.  On July 15, 2005, Mr. Jeffrey A. Friend of RMT, Project Manager, submitted a letter to the Department addressing an overflow from Tank 1 at the Site on July 14, 2005. Mr. Friend attributed the overflow to approximately 4.12 inches of rainfall being received at the Site in a forty-eight (48) hour period. Mr. Joe Riley and Mr. Wendell Brooks, acting as agents for the Respondent, notified the Department by telephone of the overflow.

4.  On August 19, 2005, Mr. Friend, submitted a letter to the Department addressing an overflow from Tank 1 at the Site on August 9, 2005. Mr. Friend attributed the overflow to approximately 6.13 inches of rainfall in a forty-eight (48) hour period. Mr. Friend stated that at the beginning of the storm event Tank 1 had a level of twelve and eight tenths (12.8) feet with and additional thirteen and four tenths (13.4) feet of freeboard. Mr. Riley notified the Department of the overflow via telephone on August 19, 2005.

2

5.     On June 14, 2006, Department staff received a call regarding an on-going overflow of Tank 1 at the Site. Department staff met with Mr. Riley at the Site to discuss the overflow. Mr. Riley stated that once the water level in Tank 1 was reduced to a level to allow adequate treatment the water contained in the overflow area would be pumped back into Tank 1 for proper treatment. During this Site visit, Department staff observed entries into the operator's logbook for the Site and determined that an unreported overflow had occurred in January 2006.

6.     On June 15, 2006, Mr. Friend issued a letter to the Department addressing the overflow from Tank 1 on June 14, 2006. Mr. friend attributed the overflow to approximately six (6) inches of combined rainfall on June 13, 2006 and June 14, 2006 from Tropical Depression Alberto. Mr. Friend also stated that additional pumps would be brought in to keep Tank 1 full and reduce the amount of time available for water to percolate into the ground. Mr. Friend also stated that the balance of the water would percolate into the ground.

7.     On June 16, 2006, Department staff issued a letter to the Respondent in follow up to the meeting at the Site on June 14, 2006 and in response to Mr. Friend's letter of June 15, 2006. Department staff approved the proposed method of pumping the water from the containment area back into Tank 1. The Department requested the Respondent conduct soil testing of the soils in the containment area once all water has been removed.

8.     On July 25, 2006, Mr. Friend submitted the requested soil samples for the containment area. The samples were collected and analyzed in accordance with the Respondent's "Corrective Measures Study – October 2003" and USEPA Region 9 "Preliminary Remediation Goals – October 2004". The results of the sampling indicate an increase in contamination of the soils in the containment area for Copper, Lead, and Nickel when compared against soil samples collected in the containment area in 1998.

**From the above findings, the Department alleges that the Respondent has violated the <u>Pollution Control Act</u> and <u>Water Pollution Control Permits</u> as follows:**

1.     The Respondent violated the <u>Pollution Control Act</u>, S.C. Code Ann. § 48-1-110(d) (Supp. 2005) and <u>Water Pollution Control Permits</u>, 24 S.C. Code Ann. Regs. 61-9.122.41(a) and (e) (Supp. 2005), in that it failed to properly operate and maintain all units of treatment and control, which resulted in the unauthorized discharge of partially treated wastewater into the environment in a manner other than in compliance with a permit issued by the Department.

2.     The Respondent violated the <u>Pollution Control Act</u>, S.C. Code Ann. 48-1-90(a) (1987), in that it allowed the discharge of partially treated wastewater into the environment in a manner other than in compliance with a permit issued by the Department.

**The Respondent is further notified that failure to attend the scheduled enforcement conference may result in the issuance of an Administrative Order without your consent. Such an Order may contain the above findings and may impose monetary penalties.**

DHEC 15

This Notice is made pursuant to the <u>Pollution Control Act</u>, 48-1-50 (1987), which authorizes the Department to issue Orders and the <u>Pollution Control Act</u>, 48-1-330 (1987), which authorizes the Department to assess monetary penalties.

<u>October 3, 2006</u>

Robert L. "Lee" Proctor
Project Manager
Water Pollution Enforcement Section
Water Enforcement Division
Bureau of Water

4

BOARD:
Elizabeth M. Hagood
Chairman

Edwin H. Cooper, III
Vice Chairman

Steven G. Kisner
Secretary



C. Earl Hunter, Commissioner

*Promoting and protecting the health of the public and the environment.*

Lexington Co  BOARD:
Henry C. Scott

Paul C. Aughtry, III

Glenn A. McCall

Coleman F. Buckhouse, MD

March 05, 2007

**CERTIFIED MAIL 7006 2150 0001 1593 2273**
**RETURN RECEIPT REQUESTED**

John M Stephens, Vice President
Gaston Copper Recycling Corp
700 Southland Rd.
Gaston, South Carolina 29053

Re:     Notice of Violation                               57496
        Gaston Copper Recycling Corp
        NPDES Permit # SC0034541
        Lexington County

Dear John M Stephens:

        A review of the file for the referenced facility has found Gaston Copper Recycling Corp to be in violation of the compliance schedule of the NPDES Permit. Part IV.A.1.c. required an interim report of progress concerning compliance with copper and lead limitations to be submitted to the Department by February 1, 2007. To date, it has not been received.

        You are hereby notified that failure to comply with the compliance schedule of the NPDES Permit is a violation of the <u>Pollution Control Act</u>, S.C. Code Ann. 48-1-110(d) (1987) and <u>Water Pollution Control Permits</u>, 24 S.C. Code Ann. Regs. 61-9.122.41(a) (Supp. 2006). The violation makes Gaston Copper Recycling Corp subject to further enforcement action, which may include assessment of civil penalties as set forth in the <u>Pollution Control Act</u>, S.C. Code Ann. 48-1-330 (1987).

        **You are requested to submit a written response within ten (10) days of receipt of this notice.** Your response should include an explanation for the violation cited above and measures that have been or will be taken to ensure compliance with permit conditions. This response, however, will not relieve Gaston Copper Recycling Corp of responsibility for the violation cited.

        If you have any questions concerning this notice, you may call me at 803-898-4262. I will be glad to assist you.

                        Sincerely,

                        *Jaime Teraoka*

                        Jaime Teraoka
                        Compliance Officer
                        Water Pollution Enforcement Section
                        Bureau of Water

cc:     Columbia EQC Office

S O U T H   C A R O L I N A   D E P A R T M E N T   O F   H E A L T H   A N D   E N V I R O N M E N T A L   C O N T R O L
2600 Bull Street • Columbia, SC 29201 • Phone: (803) 898-3432 • www.scdhec.gov

DHEC 17

BOARD:
Elizabeth M. Hagood
Chairman

Edwin H. Cooper, III
Vice Chairman

Steven G. Kisner
Secretary

BOARD:
Henry C. Scott

Paul C. Aughtry, III

Glenn A. McCall

Coleman F. Buckhouse, MD





C. Earl Hunter, Commissioner

*Promoting and protecting the health of the public and the environment*

June 6, 2007

**CERTIFIED MAIL – 7006 2150 0001 1591 8307**
**RETURN RECEIPT REQUESTED**

Mr. W. Thomas Lavender, Jr., Esquire
Nexsen Pruet
1441 Main Street, Suite 1500
Columbia, SC 29201

Re:     **Consent Order 07-085-W**
          Gaston Copper Recycling Corporation
          NPDES Permit SC0034541
          Lexington County

Dear Mr. Lavender:

Enclosed, please find a fully executed Consent Order 07-085-W for the above referenced facility. The Order is considered executed effective May 29, 2007.

Please note the requirements of the Order outlined on Pages 5, 6, and 7. Please include the Order number listed above on all correspondence, including all checks remitted as payment of the civil penalty, submitted to the Department in response to this Order and its requirements.

If you have any questions, please contact me at (803) 898-4273 or by e-mail at proctorl@dhec.sc.gov.

Sincerely,

Robert L. Proctor
Water Enforcement Division
Bureau of Water

cc:     Melanie Hindman, WP Enforcement/Compliance Section
          Sonya Johnson, Region III-Columbia EQC Office
          Melinda Vickers, BOW-Industrial Wastewater Permitting Section
          Melissa King, Bureau of Land and Waste Management

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL
2600 Bull Street • Columbia, SC 29201 • Phone: (803) 898-3432 • www.scdhec.gov

DHEC 18

# THE STATE OF SOUTH CAROLINA
# BEFORE THE DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL

## IN RE: GASTON COPPER RECYCLING CORPORATION
## LEXINGTON COUNTY

## CONSENT ORDER
## 07-085-W

Gaston Copper Recycling Corporation (GCRC) (Respondent) was issued National Pollutant Discharge Elimination System (NPDES) Permit SC 0034541 and Construction Permit #17,035-WW and is responsible for the proper operation and maintenance of a storm water and groundwater treatment system, which includes two (2) storage tanks, located at 700 Southbound Road (Site), in the Town of Gaston, Lexington County, South Carolina. Tank 1 has a storage capacity of twenty-one (21) million gallons and is equipped with an unlined earthen containment area. Tank 2 has a storage capacity of three (3) million gallons and is equipped to overflow to Tank 1.

The Department and Respondent concur that in the interest of resolving this matter without delay and expense of litigation, Respondent agrees to the entry of this Consent Order, but neither agrees with nor admits the Findings of Fact or the Conclusions of Law; and therefore, agrees that this Order shall be deemed an admission of fact and law only as necessary for enforcement of this Order by the Department or subsequent actions relating to Respondent by the Department.

## FINDINGS OF FACT

1.	The Respondent was issued National Pollutant Discharge Elimination System (NPDES) Permit SC 0034541 and Construction Permit #17,035-WW and is responsible for the proper

1

operation and maintenance of a storm water and groundwater treatment system, which includes two (2) storage tanks, located at 700 Southbound Road (Site), in the Town of Gaston, Lexington County, South Carolina. Tank 1 has a storage capacity of twenty-one (21) million gallons and is equipped with an unlined earthen containment area. Tank 2 has a storage capacity of three (3) million gallons and is equipped to overflow to Tank 1.

2.  The Department issued NPDES Permit SC0034541 authorizing the Respondent to discharge treated groundwater and storm water into Fallaw's Pond to Boggy Branch to Bull Swamp Creek to the North Fork of the Edisto River in accordance with effluent limitations, monitoring requirements and other permit conditions.

3.  On July 15, 2005, Mr. Jeffrey A. Friend of RMT, Project Manager, submitted a letter to the Department regarding an overflow from Tank 1 into the unlined earthen containment area at the Site on July 14, 2005. Mr. Friend attributed the overflow to approximately 4.12 inches of rainfall being received at the Site in a forty-eight (48) hour period. Mr. Joe Riley and Mr. Wendell Brooks, acting as agents for the Respondent, notified the Department by telephone of the overflow.

4.  On August 19, 2005, Mr. Friend, submitted a letter to the Department addressing an overflow from Tank 1 into the unlined earthen containment area at the Site on August 9, 2005. Mr. Friend attributed the overflow to approximately 6.13 inches of rainfall in a forty-eight (48) hour period. Mr. Friend stated that at the beginning of the storm event Tank 1 had a level of twelve and eight tenths (12.8) feet with and additional thirteen and four tenths (13.4) feet of freeboard. Mr. Riley notified the Department of the overflow via telephone on August 9, 2005 and Department staff inspected the WWTF on August 10, 2005.

2

DHEC 20

5.  On June 14, 2006, Department staff received a call regarding an on-going overflow of Tank 1 into the unlined earthen containment area at the Site. Department staff met with Mr. Riley at the Site to discuss the overflow. Mr. Riley stated that once the water level in Tank 1 was reduced to a level to allow adequate storage, the water contained in the unlined earthen containment area would be pumped back into Tank 1 for proper treatment.

6.  On June 15, 2006, Mr. Friend submitted a letter to the Department addressing the overflow from Tank 1 into the unlined earthen containment area on June 14, 2006. Mr. Friend attributed the overflow to approximately six (6) inches of combined rainfall on June 13, 2006 and June 14, 2006 from Tropical Depression Alberto. Mr. Friend also stated that additional pumps would be brought in to keep Tank 1 full and reduce the amount of time available for water in the unlined earthen containment area to percolate into the ground. Mr. Friend also stated that the balance of the water in the unlined earthen containment area would percolate into the ground.

7.  On June 16, 2006, Department staff sent a letter to the Respondent in follow up to the meeting at the Site on June 14, 2006 and in response to Mr. Friend's letter of June 15, 2006. Department staff approved the proposed method of pumping the water from the unlined earthen containment area back into Tank 1. The Department requested the Respondent conduct soil testing of the soils in the unlined earthen containment area once all water had been removed.

8.  On July 25, 2006, Mr. Friend submitted the requested analytical results for soil samples from the bottom of the unlined earthen containment area. The samples were collected and analyzed in accordance with the Respondent's "Corrective Measures Study – October 2003" and

3

USEPA Region IX "Preliminary Remediation Goals – October 2004". The results of the sampling indicate an increase in contamination of the soils in the unlined earthen containment area for Copper, Lead, and Nickel when compared against soil samples collected in the unlined earthen containment area in 1998. Observed concentrations of Copper, Lead, and Nickel in the unlined earthen containment area's soils were less than site-specific Media Cleanup Standards approved for use in the Resource Conservation and Recovery Act (RCRA) corrective actions currently underway at the Site. In addition, concentrations for Copper, Lead, and Nickel in the unlined earthen containment area soils were also below Region IX Preliminary Remediation Goals for residential soils.

9. On October 31, 2006, Department staff held an enforcement conference with Mr. Tommy Lavender of Nexsen Pruet, Mr. Dave Comen of Kestrel Horizons, Mr. Mark Shoaf and Dr. Karen C. Saucier of RMT, Inc., and Mr. Greg McKibben of GCRC, acting as agents for the Respondent. The parties discussed the possible issuance of a Consent Order containing possible civil penalties.

10. On December 15, 2006, Mark Miesfeldt of RMT, Inc., acting as an agent for the Respondent, submitted a Technical Memorandum to the Department. The Technical Memorandum compared the analytical results of storm water samples and soils in the unlined earthen containment area to relevant standards, and provided a review of relevant hydrogeologic information with respect to the unlined earthen containment area. Recommendations of the Technical Memorandum were that additional groundwater and soil monitoring was not warranted given the pertinent information.

4

DHEC 22

## CONCLUSIONS OF LAW

Based upon the above Findings of Fact, the Department reaches the following Conclusions of Law:

1. The Respondent violated the <u>Pollution Control Act</u>, S.C. Code Ann. § 48-1-110 (d) (Supp. 2006) and <u>Water Pollution Control Permits</u>, 24 S.C. Code Ann Regs. 61-9.122.41(e)(Supp. 2006) in that it failed to properly operate and/or maintain one or more units of treatment and/or control in accordance with the requirement of its NPDES Permit.

2. The Respondent violated the <u>Pollution Control Act</u>, S.C. Code Ann. § 48-1-90(a) (1987), in that it allowed the unauthorized discharge of storm water into the environment in a manner other than in compliance with the Department.

3. The <u>Pollution Control Act</u>, S.C. Code Ann. § 48-1-330 (2006), provides for a civil penalty not to exceed ten thousand dollars ($10,000.00) per day of violation for any person violating the Act or any rule, regulation, permit, permit condition, final determination, or Order of the Department.

**NOW, THEREFORE, IT IS ORDERED, CONSENTED TO AND AGREED,** pursuant to the <u>Pollution Control Act</u>, S.C. Code Ann. § 48-1-50 (1987), and S.C. Code Ann. § 48-1-100 (Supp. 2006), that the Respondent shall:

1. Within ninety (90) days of the date of execution of this Order, submit to the Department an updated operations and maintenance manual for the proper operation and maintenance of Tank 1. The updated manual must include standard operating procedures and best management practices designed to minimize the potential for overflows from Tank 1 and ensure sufficient capacity at all times to provide storage of stormwater resulting from a

5

DHEC 23

twenty-four (24) hour/ ten (10) year storm event.

2.  By June 1, 2007, sample well MW-13 using previously approved methods for nickel, copper, lead, sulfate, field pH, field temperature, field specific conductance and field turbidity. Total metals samples should be collected using methods and techniques (such as low flow) that reduce turbidity. A second sample may be collected for metals using field- filtering techniques prior to preservation if desired. Samples from this well will be collected semi-annually thereafter for a minimum of one additional sampling event. After two sampling events the Respondent may petition the Department to cease sampling unless another release occurs provided that analytical results for the metal constituents are below applicable standards and no adverse trends in data are evident. Reports are to be submitted by July 1 and January 1 of each calendar year and are to contain data, a summary of techniques used and a discussion of the results with any appropriate recommendations and schedules for implementation as appropriate. If groundwater impacts are detected above applicable Class GB Groundwater Standards per R.61-68, for the metal constituents, a proposal for additional assessment and/or corrective measures is to be included in the applicable report.

3.  Within sixty (60) days of the date of execution of this Order, submit to the Department a detailed response and monitoring plan for the handling and sampling of water should any over flows occur from Tank 1. In addition, based upon the quality of water released, the plan should address the characterization of soil within the unlined earthen containment area and for the monitoring of groundwater in MW-13 and/or at other appropriate down gradient monitoring well based on the scope of the release. The plan should include a schedule of implementation. The plan and schedule upon Department approval shall be incorporated into

6

and shall become an enforceable part of this Order.

4. Within thirty (30) days of the date of execution of this Order, pay to the Department a civil penalty in the amount of five thousand dollars ($5,000.00).

**PURSUANT TO THIS ORDER,** communications regarding this Order and its requirements, including civil penalty payments, shall be addressed as follows:

Robert L. "Lee" Proctor
Water Enforcement Division
South Carolina DHEC
2600 Bull Street
Columbia, South Carolina 29201

The Order number should be included on all checks remitted as payment of the civil penalty.

**IT IS FURTHER ORDERED AND AGREED** that failure to comply with any provision of this Order shall be grounds for further enforcement action pursuant to the Pollution Control Act, S.C. Code Ann. § 48-1-330 (1987), to include the assessment of additional civil penalties.

**THEREFORE IT IS FURTHER AGREED** that if any event occurs which causes or may cause a delay in meeting any of the above scheduled dates for completion of any specified activity, the Respondent shall notify the Department in writing at least one (1) week before the scheduled date, describing in detail the anticipated length of the delay, the precise cause or causes of delay, if ascertainable, the measures taken or to be taken to prevent or minimize the delay, and the timetable by which those measures will be implemented.

The Department shall provide written notice as soon as practicable that a specified extension of time has been granted or that no extension has been granted. An extension shall be granted for any scheduled activity delayed by an event of *force majeure,* which shall mean the event arising from causes beyond the control of the Respondent that causes a delay in or prevents the performance of

7

any conditions of any of the conditions under this Consent Order including but not limited to: a) acts of God, fire, war, insurrection, civil disturbance, explosion; b) adverse weather condition that could not be reasonably anticipated causing unusual delay in transportation and/or field work activities; c) restraint by court order of public authority; d) inability to obtain, after exercise of reasonable diligence and timely submittal of all applicable applications, any necessary authorizations, approvals, permits, or licenses due to actions or inactions of any governmental agency or authority; and e) delays caused by compliance with applicable statutes or regulations governing contracting, procurement or acquisition procedures, despite the exercise of reasonable diligence by the Respondent.

Events which are not *force majeure* include by example, but are not limited to, unanticipated or increased costs of performance, changed economic circumstances, normal precipitation events, or any person's failure to exercise due diligence in obtaining governmental permits or fulfilling contractual duties. Such determination, after notice, will be made in the sole discretion of the Department. Any extensions shall be incorporated by reference as an enforceable part of this Consent Order and thereafter be referred to as an attachment to the Consent Order.

IT IS FURTHER ORDERED AND AGREED that this Consent Order governs only Gaston Copper Recycling Corporation's liability to the Department for civil sanctions arising from the matters set forth herein and constitutes the entire agreement between the Department and Gaston Copper Recycling Corporation, with respect to the resolution and settlement of the matters set forth herein. The parties are not relying upon any representations, promises, understandings or agreements except as expressly set forth within this Consent Order.

[Signature Page Follows]

8

DHEC 26

FOR THE SOUTH CAROLINA DEPARTMENT
OF HEALTH AND ENVIRONMENTAL CONTROL

5/29/07

Robert W. King, Jr.
Deputy Commissior
Environmental Qua

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

W. Thomas Lavender, Esquire

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

5-17-07

Sent To Gaston Copper Recycling Corp.
Street, Apt. No.; or PO Box No. 1441 Main Street, Suite 1500
City, State, ZIP+4 Columbia, SC 29201

PS Form 3800, August 2006          See Reverse for Instructions

David E. Wilson, Jr
Bureau Chief
Bureau of Water

Date: 5/17/07

Dougla
Water I
Bureau

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits. RCP 4/6/07

1. Article Addressed to:

DHEC   Mr. W. Thomas Lavender, Esquire
Nexsen Pruet
WE C( 1441 Main Street, Suite 1500
Columbia, SC 29201

2. Article Number
(Transfer from service label)    7006 2150 0001 1591 8307

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____   ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
JUN -8 2007
D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

COLUMBIA SC 29201

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Mr. John C. Stephens, Secretary

9

DHEC 27



## WASTEWATER TREATMENT PLANT
## FACILITY EVALUATION INSPECTION
## REPORT

Region III-EQC Columbia
Bldg. # 5, PO Box 156
State Park, SC 29147
803.896.0620
803.896.0617 - Fax

---

NPDES# SC0034541      Outfall: 001      Last Inspection Date: 04/17/06

Gaston Copper Recycling Corporation

Mr. John Stephens
Southwire Company
P.O. Box 1000
Carrolton, GA 30119-1000

Type of Inspection: FEI

Effective Permit Dates: 11/01/04 – 7/31/09

Operator of Record: Joe Riley
    A - P/C
    D - Bio.

(803) 796-4720

Lexington County

| Facility Observations | Rating | Field Parameters | Effluent Results |
|---|---|---|---|
| Permit | Sat | PH (SU) | No Discharge |
| Records & Reports | Sat | DO (mg/l) | No Discharge |
| Operator's Log | Sat | Temp. (dep.C) | No Discharge |
| Self-Monitoring | Sat | TRC (mg/l) | No Discharge |
| Operator of Record (Req. B) | Sat | CL2 in C.C. | No Discharge |
| Flow Measurement (1.5 Req) | *No Discharge | | |
| Bar Screen (Rotating)(2) | Sat | | |
| Clarifier-DMP(2) | Sat | | |
| Clarifier-(0.36 mgd) | Sat | | |
| Clarifier-Unipure Lamella (0.60 mgd)(2) | Sat | | |
| Sludge Disposal (Pinewood & Rich Co. NE) | Sat | | |
| Final Filters(Sand)(3-0.5 mgd) | Sat | | |
| Housekeeping | *Sat | | |
| Other-Stormwater Tank#1 (21 mgd) | *Sat | | |
| Other-Stormwater Tank#2 (3 mgd) | Sat | | |
| Other-pH Adj. Tanks (4) (2500 gals) | Sat | | |
| Unipure Reactor Modules (2) | Sat | | |
| Other-Ferrous Chloride Tank | Sat | | |
| Other-Polymer Tanks (2) | Sat | | |
| Other-Alum Tank | Sat | | |
| Other-Caustic Tank | Sat | | |
| Other-Effluent Tank (5,000 gal) | Sat | | |
| Other: Sludge Tanks (2) | Sat | | |
| Other: Sludge Filter Press | Sat | | |
| Floor Sump Pump | Unsat | | |

*Note if observations are satisfactory or unsatisfactory.
Weather: Fair      Effluent Appearance: No Discharge

### Remarks / Comments / Recommendations:

    The facility has not discharged since April 27, 2007 due to the lack of rain. Currently the treatment plant is being utilized to pretreat the water that is pumped from Tank 2 to Tank 1. When inspecting the facility, pretreated water and water from the sludge press was noted on the floor of the plant. This was due to an inoperable sump pump for the floor drain system. It was also noted that the facility's flow meter was due for it's annual calibration. It is being requested that the sump pump be repaired or replaced, and returned back into operation. It is also being recommended that the facility's flow meter be calibrated. The vegetative growth around Tank 1 (trees, bushes, etc.) should also be assessed to avoid possible future structural damage to the tank. This inspection is being rated satisfactory; however, this rating is pending that the issues noted above are addressed.

**DHEC 28**

*Satisfactory*                <u>06/12/07</u>                <u>1215</u>
Overall Rating             Date: (mm/dd/yy)       Entry/Exit Times

 <u>Joe Riley</u>               <u>Trent Watford</u>
Operator w/Inspector      DHEC Field Inspector       Reviewed By

This inspection was made to determine the operating condition of the facility, and is not to be interpreted that adequate treatment is being provided.



**D H E C**

PROMOTE PROTECT PROSPER
South Carolina Department of Health
and Environmental Control

**WASTEWATER TREATMENT PLANT**
**FACILITY EVALUATION INSPECTION**
**REPORT**

EQC – Region 3 Columbia
Bldg. # 5, PO Box 156
State Park, SC 29147
803.896.0620
803.896.0617 - Fax

NPDES #: ND0084662

Outfall: 001

Last Inspection Date: 04/17/06

Facility Name: Gaston Copper

Effective Permit Dates: 08/01/05 – 07/31/12

Mr. John Stephens
Southwire Company
P.O. Box 1000
Carrolton, GA 30119-1000

Name and Grade of
Operator on Site: Joe Riley
A – P/C
D – Bio.

County: Lexington

Field Observations    Rating

Field Parameters    Eff. Results

| Field Observations | Rating |
|---|---|
| Permit | Sat |
| Records and Reports | Sat |
| Operator's Log | Sat |
| Self-Monitoring ( ) | Sat |
| Operator of Record ( ) | Sat |
| Flow Measurement | Sat |
| Bar Screen | N/A |
| Grinder | N/A |
| Grit Removal | N/A |
| Primary Sedimentation | N/A |
| Trickling Filter | N/A |
| Aeration () | N/A |
| Secondary Sedimentation | N/A |
| Digester () | N/A |
| Wetland Ponds (2) | *Sat |
| Post Chlorination () | N/A |
| Dechlorination () | N/A |
| Sludge Disposal | N/A |
| Housekeeping | Unsat |
| Infiltration Basins | *Sat |
| Tank #1 | *Sat |
| Tank #2 | Sat |

Weather: Fair

| Field Parameters | Eff. Results |
|---|---|
| pH (SU) | N/A |
| DO (mg/l) | N/A |
| Temp. (deg. C) | N/A |
| TRC (mg/l) | N/A |
| Cl2 in C.C. | N/A |

### Remarks / Comments / Recommendations:

The process for this facility involves influent from holding tanks entering a wetlands treatment system. Currently the treatment plant is being utilized to pretreat the water that is pumped from Tank 2 to Tank 1. The influent enters two wetland holding ponds, then to five infiltration cells/basins, with one of the infiltration cells being much larger than the other four. The flow at the facility is estimated and reported once per month. The flow measurement is obtained from a flow meter at the pumpstation near Tank 1. An active telemetry system is also located at the pumpstation. The permittee continues to have percolation issues with the infiltration cells; however, the treatment plant is utilized when this issue is experienced. Duckweed was observed on the surface of both wetland ponds. It was also noted that the vegetation around the wetland ponds and the infiltration basins needs to be maintained. Furthermore, the vegetative growth around Tank 1 (trees, bushes, etc.) should also be assessed to avoid possible future structural damage to the tank. This inspection is being rated satisfactory; however, this rating is pending that the vegetation around the wetland ponds and infiltration basins is maintained. It is also being requested that the vegetative growth around Tank 1 be assessed.

*Satisfactory*
Overall Rating

06/12/07
Date: (mm/dd/yy)

1315
Entry/Exit Times

Joe Riley
Operator w/Inspector

Trent Watford
DHEC Field Inspector

Reviewed By

Inspection was made to determine the operating condition of the facility, and is not to be interpreted that adequate treatment is being provided.

**DHEC 30**