UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FRIENDS OF THE EARTH, INC., *et al.,*   )
                                        )
                  Plaintiffs,           )
                                        )
         v.                             )
                                        )   Civil No. 3:92-2574-O
GASTON COPPER RECYCLING                 )
CORPORATION,                            )
                                        )
                  Defendant.            )
                                        )

**PLAINTIFFS' SUR-SUR REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT THAT THEY
HAVE STANDING TO CONTINUE THIS ACTION**

The Court of Appeals for the Fourth Circuit ordered this remand for fact finding on a "narrow" issue related to plaintiffs' standing – whether any of plaintiffs' members use waters within the range of Gaston's pollution. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 263 Fed. Appx. 348, 356 (4th Cir. 2008) ("*Gaston II*"). Specifically, the Fourth Circuit directed this Court to resolve two factual questions. The first question is whether any of plaintiffs' members "used the waters at the confluence of Bull Swamp Creek and the Edisto's North Fork." *Ibid*. The second questions is "how much farther beyond the confluence that [Gaston's] runoff proceeded, and where, in relation to this point, the waters that [plaintiffs' members] used and planned to use were." *Ibid*. Under the Fourth Circuit's decision, to maintain their standing, plaintiffs need only demonstrate that at least one of their members uses waters within the range of Gaston's pollution, either at the confluence or downstream of the confluence on the Edisto River.

Plaintiffs have now answered both of the Fourth Circuit's questions through the evidence they have submitted in support of their summary judgment motion. First, they have shown that Guy

Jones, a member of both CLEAN and FOE, has used the waters at the confluence of Bull Swamp Creek and the North Fork of the Edisto River since the 1980's, well before the death of Wilson Shealy in 2002. Memorandum in Support of Plaintiffs' Motion for Summary Judgment that They Have Standing to Continue This Action ("Pl. Mem."), pp. 13-16, Pl. Exs. 2, 11; Plaintiffs' Reply Brief in Support of Their Motion for Summary Judgment that They Have Standing to Continue This Action ("Pl. Reply Br."), pp. 5-8, Pl. Ex. 13. This fact alone is a sufficient basis for finding that plaintiffs have maintained their standing throughout this case.

Gaston does not dispute that Mr. Jones has used the waters at the confluence. Gaston Copper Recycling Corp.'s Sur-Reply on Standing ("Def. Sur-Reply"), pp. 1-2. Rather, in its sur-reply, Gaston argues that its discharge never reached the confluence in the first place. *Id.*, p. 2. As plaintiffs explained in their reply brief, this assertion is directly contrary to the Fourth Circuit's decisions and therefore is precluded by the "mandate rule," which makes an appellate court's decision binding on remand. Pl. Reply Br. 10-13.

Gaston claims that the Fourth Circuit's finding in its first decision that Gaston's discharge reaches the confluence was dictum. Def. Sur-Reply 2. However, this finding was not dictum, because the Fourth Circuit's finding that the pollution reached at least the confluence was critical to its holding that Wilson Shealy used waters within the zone of Gaston's discharge. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 158 (4th Cir. 2000) (*en banc*) ("*Gaston I*") ("DHEC has indicated that the runoff will reach at least as far as the Edisto, which lies 12.5 miles beyond Shealy's property. Shealy's lake and home therefore lie more than four times closer to Gaston Copper than the acknowledged outer perimeter of the discharge zone"). Moreover, Gaston entirely ignores the Fourth Circuit's second decision – the decision ordering this remand. In that

2

decision, the Fourth Circuit reaffirmed its finding that Gaston's discharge reaches the confluence and further noted that this was not necessarily the farthest point it reached. *Gaston II*, 263 Fed. Appx. at 355-356. The court of appeals then ordered this remand to determine whether any of plaintiffs' members "used the waters at the confluence" and how far "beyond the confluence" Gaston's discharge reaches. *Id*. at 356. Thus, the Fourth Circuit's finding that the discharge reaches the confluence was both the basis and starting point for this remand.

Second, plaintiffs have demonstrated that a substantial portion of the metals discharged by Gaston that reach the confluence will travel at least 105 miles downstream of the confluence (and not, as Gaston has repeatedly claimed, to the Atlantic Ocean) and that plaintiffs' members Guy Jones and William Anderson use the waters within this range. Pl. Mem. 16-26, Pl. Exs. 1-3. Gaston has presented no evidence that the metals will not travel this distance after reaching the confluence. It argues instead that the metals will remain "within Bull Swamp Creek" and never reach the confluence, but again, this assertion is contrary to the Fourth Circuit's rulings. Def. Sur-Reply 3.

Because Gaston's discharge reaches at least 105 miles downstream, Gaston has contributed to pollution in the Edisto River within that range. Pl. Reply Br., Pl. Ex. 14, para. 14; Third Declaration of Bruce A. Bell (attached hereto as Plaintiffs' Exhibit 16), para. 3. It is not necessary for plaintiffs to show that Gaston is the only source of pollution on the river. As the Fourth Circuit has explained, "[t]o establish standing to redress an environmental injury, plaintiffs need not show that a particular defendant is the only cause of their injury, and that, therefore, absent the defendant's activities, the plaintiffs would enjoy undisturbed use of a resource." *Natural Resources Defense Council, Inc. v. Watkins*, 954 F.2d 974, 980 (4th Cir. 1992). "The requirement that plaintiffs' injuries be 'fairly traceable' to the defendant's conduct does not mean that plaintiffs must show to a scientific

3

certainty that defendant's effluent, and <u>defendant's effluent alone</u>, caused the precise harm suffered by the plaintiffs" (emphasis added). *PIRG v. Powell Duffryn Terminals*, 913 F.2d 64, 72 (3d Cir. 1990), certiorari denied, 498 U.S. 1109 (1991).

In its sur-reply and additional declaration by Mr. Durkee, Gaston maintains its focus on issues that are irrelevant to plaintiffs' standing and far removed from the Fourth Circuit's simple test. Gaston contends that plaintiffs must show measurable harm to the North Fork of the Edisto River from Gaston's discharge violations. Def. Sur-Reply 3-4. As plaintiffs explained in their reply brief, this would establish a test for standing that is more onerous than the test for liability. Pl. Reply Br. 13-15. The Fourth Circuit in this case held that no showing of harm to water quality is necessary to establish standing. *Gaston I*, 204 F.3d at 151, 162, 163.

Moreover, Gaston ignores entirely the vast majority of violations found by this Court: the hundreds of occasions on which Gaston failed to monitor its discharge in accordance with its permit and the additional hundreds of occasions on which Gaston failed to report the results of its monitoring to the government agencies and public as required. Findings of Fact and Conclusions of Law, Docket No. 166 (July 18, 2003), pp. 28-40. The Fourth Circuit has found that citizen-plaintiffs have standing based solely on the failure to file discharge monitoring reports, when, like here, due to the defendant's actions, there are no records of the amount of pollution that it discharged on hundreds of occasions. In these circumstances, a citizen-plaintiff obviously could never show measurable harm to the receiving waters since the discharger, like Gaston, has failed to make and report the required measurements of the pollution it discharged. In *Sierra Club v. Simkins*, 847 F.2d 1109, 1113 (4th Cir. 1988), the Fourth Circuit concluded that a member who has recreational, aesthetic, environmental and informational interests in the receiving waters of a discharger has

4

"actual injury stemming from reporting and sampling violations" and "threatened injury stemming from failure to report on maximum levels of harmful effluents." The court of appeals found that these injuries and threatened injuries "establish[] injury traceable to Simkins' actions." *Ibid*.

While the arguments in Gaston's sur-reply and Mr. Durkee's second declaration are not relevant to the remand issue, they have necessitated that Dr. Bell submit another declaration in response. Among other things, Dr. Bell explains that Gaston's assertion that waters in Bull Swamp Creek are "indistinguishable" from waters upstream of the confluence (Def. Sur-Reply 5) is unsupported. Pl. Ex. 15, para. 6. As stated in Dr. Bell's declaration, it is not possible to determine the impact of discharge based on the data presented by Mr. Durkee because no samples were taken on the dates of Gaston's discharge violations. *Ibid*. Dr. Bell also explains that Mr. Durkee is incorrect in claiming that, on dates samples were taken, results below the PQL were "undetectable" (Second Declaration of John K. Durkee, para. 3). Pl. Ex. 15, para. 4. While results below the PQL cannot be quantified to a statistical certainty, they are not the equivalent of zero and, in the case of some relevant metals, may in fact exceed the water quality standard. *Ibid.*; Pl. Reply Br., Pl. Ex. 14, para. 13. Plaintiffs emphasize again, however, that resolution of such issues is not necessary for the determination of plaintiffs' standing.

It is clear beyond any doubt that plaintiffs have satisfied the Fourth Circuit's test for establishing their standing. Plaintiffs' member Guy Jones uses the waters at the confluence, which the Fourth Circuit has already held is affected by Gaston's pollution. Plaintiffs have also shown that Gaston's discharge travels downstream of the confluence at least 105 miles and that plaintiffs' members Guy Jones and William Anderson use the waters within this range. Both members began their use of the waters well before the death of Wilson Shealy on September 22, 2002, and intend

5

to continue their use in the future. Gaston's only response to these clear facts has been to interject arguments that have no place in a standing analysis and have led this proceeding far astray from the Fourth Circuit's simple directive. Therefore, summary judgment should be awarded to plaintiffs.

Respectfully submitted,

/s/ Kathleen L. Millian

BRUCE J. TERRIS
KATHLEEN L. MILLIAN
JANICE GORIN
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC 20005
(202) 682-2100
BTerris@tpmlaw.com
KMillian@tpmlaw.com
JGorin@tpmlaw.com

/s/ Robert Guild

ROBERT GUILD
ID # 2499
314 Pall Mall
Columbia, SC 29201
(803) 252-1419
BGuild@mindspring.com

November 10, 2008