UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| FRIENDS OF THE EARTH, INC., *et al.*, | ) | Civil Action No. 3:92-2574-MJP |
| Plaintiffs, | ) | |
| v. | ) | ORDER |
| GASTON COPPER RECYCLING CORPORATION, | ) | |
| Defendant. | ) | |

This case is pending on appeal in the United States Court of Appeals for the Fourth Circuit pursuant to the Defendant's appeal from this court's order imposing civil penalties against it in the underlying citizen suit brought by the Plaintiffs, Friends of the Earth (FOE) and Citizens Local Environmental Action Network (CLEAN) under the Clean Water Act, 33 U.S.C. §§ 1251-1387. The Court of Appeals has remanded the case to this court for factual findings relating to whether the Plaintiffs continue to have standing to prosecute this suit.

This action was commenced by the Plaintiffs Friends of the Earth (FOE) and Citizens Local Environmental Action Network (CLEAN) against the Defendant Gaston Copper Recycling Corporation pursuant to the Clean Water Act, 33 U.S.C. §§ 1251-1387. The Plaintiffs allege that Gaston Copper has been illegally discharging pollutants into a South Carolina waterway. The Plaintiffs seek a declaratory judgment, injunctive relief, and other statutory penalties.

In its answer, Gaston Copper denied the principal allegations of the complaint and additionally asserted that the Plaintiffs lack standing to pursue this action and it seeks dismissal thereof.

Upon consideration of the evidence pertaining to the Plaintiffs' standing, this court concluded that the evidence failed to establish that any of the Plaintiffs' members had suffered injury that was causally related to the challenged conduct of Gaston Copper. Therefore, the court concluded that neither of the Plaintiffs have standing to pursue this action. *Friends of the Earth, et al. v. Gaston Copper Recycling Corp.*, 9 F.Supp.2d 589 (D.S.C. 1998). A divided panel of the United States Court of Appeals for the Fourth Circuit affirmed this Court's decision. *Friends of the Earth, et al. v. Gaston Copper Recycling Corp.*, 179 F.3d 109 (4th Cir. 1999). Upon *rehearing en banc*, the Court of Appeals observed that "Wilson Shealy, a CLEAN member who owns a lake four miles downstream from Gaston Copper's facility, testified that the illegal discharges caused him and his family to reduce their use of his lake" and that CLEAN also submitted various federal, state, and private studies as evidence that the pollutants released by Gaston Copper adversely affected or threatened Shealy's lake." Therefore, upon the evidence and upon the then recent decision of the United States Supreme Court in *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167 (2000), the Court of Appeals held that Shealy and hence CLEAN has the requisite standing to proceed with this action. The Court vacated the panel opinion, reversed this court's judgment and remanded the case to this court for a determination of whether Gaston Copper has discharged pollutants in excess of its permit limits. *Friends of the Earth v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000)(*en banc*).

On remand, this court found that Gaston Copper violated its effluent limitations for a total of 91 days. Phase I discharge violations found by this court concerned levels of ph, cadmium, zinc and iron, while Phase II discharge violations concerned the same pollutants as well as oil, grease and copper. However, this court determined that because DHEC had agreed to delay the effective date of Phase II effluent limits, Gaston Copper was not required to comply with those stricter limits until

April 2, 1993, and thus was not liable either for exceedances of those limits or failure to report such exceedances prior to that date. This court also found 396 monitoring violations and 332 violations for failing to report discharge exceedances and monitoring violations. Finally, this court found that Gaston Copper violated its schedule of compliance for 54 days. Finding that Gaston Copper had made a good faith effort to comply with its permit and that it obtained no economic benefit from its non-compliance, this court imposed a civil penalty of $2,340,000 and required Gaston Copper to pay Plaintiffs' attorneys fees and costs. As the Court of Appeals has observed, several post-trial motions were filed after this Court entered its judgment. Gaston Copper filed a motion asking the Court to alter or amend its findings on the ground that "the court erred in calculating the civil penalty amount by including matters not covered by the notice letter served by the Plaintiffs."

Additionally, Plaintiffs and Gaston Copper filed post-trial motions relating to standing. Plaintiffs moved to amend the judgment pursuant to Rules 52(G) and 59(e) to reflect that Shealy had died prior to judgment, but that the Plaintiffs continued to have standing through FOE and CLEAN member Jones and FOE member McCullough. Plaintiffs also sought to present affidavits from Shealy's widow and son asserting that they were members of CLEAN and adopting Shealy's testimony as their own. Plaintiffs also presented an affidavit from Jones describing his continued use of the Edisto River. Gaston Copper opposed Plaintiffs' motion and moved for relief from the judgment on the ground that the Plaintiffs no longer had standing to prosecute this case after Shealy's death.

On September 12, 2005, this court granted the Plaintiffs' motion to amend the judgment to reflect that Shealy had died, and held that the Plaintiffs continue to have standing through Jones and McCullough. On May 22, 2006, this Court denied Gaston Copper's motions challenging the amount

of the civil penalty and claiming that Plaintiffs no longer had standing after Shealy's death. Gaston Copper then filed this appeal.

With respect to the issue of standing, the Plaintiffs are both associations consisting of their individual members. As association has:

> standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

*Hant v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343 (1977). The Court of Appeals observed that "the question, then, is whether any of the Plaintiffs' members satisfied the general requirements for individual standing."

To demonstrate that its members have standing, an organization bears the burden of proving that: (1) at least one of its members has suffered an actual or threatened injury; (2) the injury fairly traceable to the defendant's actions; and (3) the injury will likely be redressed if it prevails in the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "A plaintiff need not show a traditional trespass on property or tortious injury to satisfy the actual or threatened injury requirement." *Gaston Copper Recycling*, 204 F.3d at 154. Rather, damage to an individual's "aesthetic or recreational interests" may be sufficient. *Id*. However, "because these and other non economic interests may be widely shared, the Supreme Court has cautioned that environmental plaintiffs must themselves be among the injured." *Id*.

Gaston Copper argues that the Plaintiffs have not established that their members are among the injured because they have not shown that the members have the proper connection to the affected water.

The Court reviewed the testimony of Jones and McCullough concerning their use and their intended use of the affected water of the Edisto River. The Court of Appeals observed that in *Lujan*, the Supreme Court explained that a "Plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly in the vicinity of it." *Lujan*, 504 U.S. at 565-66. Gaston Copper argues that here the Plaintiffs have established only that their members used water downstream of the point to which its discharge flowed and that that is not sufficient to satisfy the *Lujan* standard. The Court of Appeals stated that considering the current state of the record, it is "unable to determine whether the Plaintiffs' members have a sufficient connection to the affected area." The Court of Appeals emphasized that "the problem we are left with...is that we cannot determine whether Jones or McCullough had the requisite connection to water in the affected area without knowing either that they used the waters at the confluence of Bull Swamp Creek and the Edisto North Fork or knowing have much farther beyond the confluence that the runoff proceeded and where, in relation to this point, the waters that Jones and McCullough used and planned to use were." The Court, therefore, ordered a limited remand so that this Court could resolve these factual issues.

On November 17, 2008, this Court convened a hearing and heard the parties contentions concerning the issue on remand. Thereafter, the parties submitted proposed findings of fact.

Upon consideration of the record of evidence, the following findings are hereby entered:

1. Guy Jones is a member of the Citizens Local Environmental Action Network, Inc. (CLEAN) and Friends of the Earth, Inc. (FOE).

2. Since 1983, Mr. Jones has been President and majority owner of River Runner Outdoor Center ("River Runner"). River Runner is a company that provides guided canoe and kayak trips for the general public, including trips on the Edisto River. Mr.

Jones has personally organized and guided many of these trips. Mr. Jones also makes personal canoe trips on the Edisto River.

3.  Mr. Jones and other River Runner employees have guided trips on a route that includes the confluence of Bull Swamp Creek and the North Fork of the Edisto River ("confluence"). This route begins at Slab Landing Road, which is located slightly upstream of the confluence, and continues through the waters at the confluence and downstream of the confluence to Shillings Bridge Road.

4.  Mr. Jones began making trips to the confluence in the 1980's and continued making trips to the confluence in the 1990's and 2000's. On or about March 11, 2000, Mr. Jones guided a group of Russian citizens participating in an exchange program operated by the University of South Carolina on a trip that included the confluence. In approximately 1999, Mr. Jones made a trip to the confluence with Brent Blackwelder, president of plaintiff Friends of the Earth, and Robert Guild, one of plaintiffs' counsel in this case. Mr. Jones made a number of other trips to the confluence from the 1980's to the present but no longer remembers the exact dates of those trips.

5.  In recent years, River Runner has decreased the number of trips it takes near the confluence, in part because of concern that runoff from Gaston Copper Recycling Corporation's ("Gaston") facility is polluting this area.

6.  The Court has found that during the period from 1990 to 1997, Gaston violated the discharge limits of its National Pollutant Discharge Elimination System permit for cadmium, copper, iron, and zinc, among other pollutants. The Court also found that Gaston violated its permit during this period by failing to properly monitor and/or

report discharges of cadmium, copper, iron, lead, mercury, nickel, and zinc, among other pollutants.

7. A substantial portion of the cadmium, copper, lead, mercury, nickel, and zinc discharged by Gaston that reaches the confluence will travel in the Edisto River at least 105 miles downstream of the confluence.

8. In addition to his use of the waters at the confluence, over the past 25 years, Mr. Jones has also made numerous trips on the Edisto River from Shillings Bridge Road to the Edisto Gardens in the City of Orangeburg, from the City of Rowesville to the City of Branchville, and from Green Pond Church to Colleton State Park. All of these routes are within the 105 miles downstream of the confluence.

9. Mr. Jones has an economic interest in the water quality of the Edisto River at, and downstream of, the confluence because River Runner guides trips in these areas and its customers want to take trips in waters that are thought to be clean. He is also concerned about the water quality of the Edisto River at these locations because of the personal trips he takes on the river.

The United States Court of Appeals has held that the Plaintiffs had standing from the commencement of this action until the death of CLEAN member Wilson Shealy on September 22, 2002. Based upon that finding, this Court finds that the Plaintiffs have maintained standing based upon Guy Jones' membership in Plaintiffs FOE and CLEAN.

s/Matthew J. Perry, Jr.
Senior United States District Judge

Columbia, South Carolina
March 5, 2010